**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Ralph Carmine GRANDINETTI, Defendant-Appellant.**

**Nos. 77–5080 and 77–5035.**

United States Court of Appeals, Fifth Circuit.

Dec. 15, 1977.

Ralph Carmine Grandinetti, pro se.

Denis Dean, Miami, Fla. (court-appointed), for defendant-appellant in 77–5035 and 77–5080.

Arthur Massey, Miami Springs, Fla., for Bond Pending Appeal.

Jack V. Eskenazi, U. S. Atty., C. Wesley G. Currier, David F. Geneson, Asst. U. S. Attys., Miami, Fla., for plaintiff-appellee.

Before BROWN, Chief Judge, RONEY and FAY, Circuit Judges.

FAY, Circuit Judge:

This appeal presents the rather narrow issue of whether the government breached a plea agreement by expressing to the sentencing judge reservations over the terms contained within the agreement. Because we conclude that the plea bargain was not carried out by the attorneys of the government who either negotiated the plea or were charged with carrying out the plea agreement, we vacate the sentence and remand for the defendant to be resentenced by another district judge.

The facts in this case are somewhat complicated. The defendant, Ralph Carmine Grandinetti, was originally indicted in 1975 in a three count indictment charging conspiracy, possession, and distribution of cocaine. The defendant plead guilty to Count I and was sentenced to three years incarceration—four months of which were to be served pursuant to the split sentence provision of 18 U.S.C. § 3651, and followed by four years probation. Counts II and III of this indictment were subsequently dismissed by the government with the approval of the court. This case was heard before United States District Judge Norman Roettger.

After the defendant served his period of incarceration and while he was on probation, he was again arrested and indicted on a three count indictment charging the defendant with counterfeiting more than $1,000,000.00 in obligations of the United States. This case was assigned to United States District Judge James Lawrence King.

During the pendency of this second case, an agreement was entered into between the government and the defendant which provided in pertinent part:

That the Government shall recommend to the Court a sentence of five years on each of the pending cases, said sentence to run concurrently; and five years on the Violation of Probation charge, to run concurrently with the sentences in cases 76–235–Cr–JLK and 76–223–Cr–PF.

After reaching this agreement, the defendant entered a plea of guilty to Count I of the indictment. Counts II and III of the indictment were dismissed by the government with the approval of the court. Judge King, who sentenced the defendant on the counterfeiting charge, advised the defendant prior to sentencing that he did not recognize nor permit plea bargaining, and that the sentencing was entirely up to the court. The defendant acknowledged that he understood the court's position, but nevertheless entered his plea of guilty. Judge King then sentenced the defendant to five years imprisonment—which happens to be the amount agreed to by the government and the defendant.

The day following the defendant's sentencing on the counterfeiting charge, a revocation of probation hearing was held before Judge Roettger, who had sentenced the defendant approximately a year earlier on the cocaine charge. It was at this probation revocation hearing that the alleged breach of the plea agreement occurred. The government at this hearing was represented by a new Assistant United States Attorney other than the one who had negotiated the plea agreement and who was present at the counterfeiting sentencing. It is the less than enthusiastic support of the plea agreement shown by the new government attorney which is the foundation for the defendant's contention that the agreement was breached.

The defendant contends that the government attorney at the revocation hearing acted as though he had never seen the agreement when he said:

Excuse me. May it please the Court. I understand there is a written agreement which should be in the Court file. Might I have a look at that while counsel is making his remarks to the Court?

This statement, plus the government's responses to the defense attorney's statement that the government had recommended concurrent sentences, are the basis for the breach allegation. The government's response to the concurrent sentence recommendation was:

And I have very serious problems with that, Your Honor, so I'd like to look at the stipulation.

After looking at the stipulation, the Assistant United States Attorney concluded his remarks by saying:

I think, Your Honor, based on that particular instrument that the Government is locked-in to the language of that thing. I'm not too sure of the legality of it nor the propriety, but none the less it is there.

The defendant contends that the Assistant United States Attorney not only failed to actively advocate the government's position as set forth in the agreement, but he actually did more harm by his statements. The result being that Judge Roettger rejected the government's recommendation, and sentenced the defendant to serve the balance of his previously imposed sentence *consecutive* to that sentence imposed by Judge King.

Disposition of this case is governed by *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). The principle to be derived from that case is that when a guilty plea "rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be

part of the inducement or consideration, such promise must be fulfilled." *Id.* at 262, 92 S.Ct. at 499. It can not be seriously contended that in entering this plea agreement, the defendant did not have every right to expect that in exchange for his guilty plea the government would *strongly* recommend the agreed to sentence. This expectation was certainly an "inducement or consideration" for the plea, and, thus, if the agreement was not fulfilled, the defendant would be entitled to relief. This is so regardless of whether the failure of the government to strongly advocate the agreement had any effect on the sentencing judge. Judge Roettger in this case articulated very persuasive reasons why he was not following the plea agreement, but the sentence must nevertheless be vacated if the agreement was not kept because the defendant offers his plea not in exchange for the actual sentence or impact on the judge, but for the prosecutor's statements in court. If these statements are not adequate (as opposed to successful), then the agreement has not been fulfilled. *See Santobello, supra,* 404 U.S. at 262, 92 S.Ct. 495; *Petition of Geisser,* 554 F.2d 698, 704 (5th Cir. 1977); *Correale v. United States,* 479 F.2d 944 (1st Cir. 1973).

In determining whether the government fulfilled the plea agreement by *recommending* a five year concurrent sentence, we are provided some guidance by the Fourth Circuit's opinion in *United States v. Brown,* 500 F.2d 375 (4th Cir. 1974). In that case the trial judge asked the prosecutor why he was recommending a particular sentence. The prosecutor responded "Well Your Honor, that was part of the plea bargaining." The prosecutor then responded to the court's inquiry as to whether he believed that this was the correct sentence by saying, "Well Your Honor, I do have some problems with that, anyhow, but that is the way I understand it." *Id.* at 377. The Fourth Circuit reversed, and stated that in this situation the government had failed to keep its bargain. The court explained:

We have no occasion to consider the propriety of sentence, or recommendation as to sentence, as an element of a plea bar-

gain, but it is manifest that the consideration which induced defendant's guilty plea was not simply the prospect of a formal recitation of a possible sentence, but rather the promise that an Assistant United States Attorney would make a recommendation on sentencing. This could reasonably be expected to be the sound advice, expressed with some degree of advocacy, of a government officer familiar both with the defendant and with his record and cognizant of his public duty as a prosecutor for the United States.

Undoubtedly the district court had this understanding of the role of an Assistant United States Attorney at sentencing when he sought the prosecutor's recommendation. Certainly he was entirely correct in inquiring into the basis of the recommendation to aid him in the exercise of his sentencing discretion. Whether the prosecutor's halfheartedness in presenting the recommendation was a factor in the district court's imposing a sentence more severe than that "recommended" is a matter into which we need not inquire. In *Santobello,* where one prosecutor had promised not to make a sentencing recommendation at the time of plea bargaining and then another prosecutor had called for the maximum punishment at the time of sentencing, there was a strong, unequivocal statement by the trial judge that his sentence was not affected in any way by the prosecutor's recommendation but rather was based on a highly adverse presentence report, parts of which he read into the record. Stating that they had "no reason to doubt" the trial judge's statement "that the prosecutor's recommendation did not influence him," the Court nonetheless reversed and remanded, "emphasiz[ing] that this is in no sense to question the fairness of the sentencing judge; the fault here rests on the prosecutor, not on the sentencing judge." 404 U.S. at 262–263, 92 S.Ct. at 499. The question of the effect on the district court of the prosecutor's noncom-

pliance with the plea bargain was thus deemed irrelevant.

*Id.* at 377, 378.

We adhere to the reasoning of the *Brown* decision, and feel that the "recommendation" put forth by the prosecutor in our case provides an even more compelling reason to vacate the sentence than existed in *Brown.* The government's attorney in the case before us was not only an unpersuasive advocate for the plea agreement, but, in effect, argued against it. The government tries to justify this by pointing out that its attorney had not seen the agreement, and was not the attorney who originally negotiated it. This contention was answered by the Supreme Court in *Santobello* when it stated in response to a similar argument that:

> The staff lawyers in a prosecutor's office have the burden of "letting the left hand know what the right hand is doing" or has done. That the breach of the agreement was inadvertent does not lessen its impact.

402 U.S. at 262, 92 S.Ct. at 499.

We feel that the test which we are to apply is simply whether the plea bargain agreement has been breached or not—irrespective of prosecutorial justifications for the failure in performance. We hold that in this case the defendant did not receive the benefit of his bargain—that benefit being a forceful and intelligent recommendation for concurrent sentences.[1] As a result, the sentence imposed by Judge Roettger must be vacated. We emphasize, however, that we are in no way questioning the fairness of the sentencing judge. The fault here rests on the prosecutor, not on the judge.

We turn now to the question of exactly what relief should be granted to the defendant. The defendant argues that the government's failure to carry through with the plea agreement should result in the judgment and sentences in both cases being set aside and the defendant being allowed to proceed to trial, if he so desires, with the probation revocation proceedings to follow if necessary. We do not agree. The defendant entered his plea to the counterfeiting charges before Judge King fully aware of the fact that the judge did not accept plea bargaining agreements. The defendant, however, ultimately received from Judge King the sentence for which he was hoping. The defendant can only complain about the government's performance at the probation revocation hearing. Consequently, we let stand the sentence imposed by Judge King, and vacate only the sentence imposed by Judge Roettger. Also, in light of the procedures followed by the Supreme Court in *Santobello,* we remand the case to the district court for a revocation hearing before a different district judge at which proceeding the government's attorney is expected to be an advocate for the sentence set forth in the plea agreement.

Affirmed on 77–5035; remanded in 77–5080.

---

1. The government argues that one of the reasons it hesitated in recommending the sentence agreed upon was because it was an illegal sentence. Technically this is true. In the agreement, the government stated it would recommend five years for violation of probation, to run concurrently with Judge King's sentence. This sentence is, in fact, illegal because the defendant had less than five years remaining on the sentence for which probation was being revoked. This argument, however, overlooks what the defendant was truly bargaining for—that being a concurrent sentence. It also overlooks the fact that the government is charged with knowing the law, and the government's ignorance of it should not work to the defendant's detriment. In any event, at the eventual resentencing of this defendant, the government should recommend to the court a sentence equal to the remainder of the previously imposed sentence—such sentence to run concurrently with Judge King's sentence.