**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Colin KERDACHI, Defendant-Appellant.**

**No. 84–2304.**

United States Court of Appeals,
Fifth Circuit.

March 19, 1985.

Jerre S. Williams, Circuit Judge, dissented and filed opinion.

Wendell A. Odom, Jr., Houston, Tex., for defendant-appellant.

Daniel K. Hedges, U.S. Atty., James R. Gough, Asst. U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before GOLDBERG, POLITZ and WIL-LIAMS, Circuit Judges.

POLITZ, Circuit Judge:

Colin E. Kerdachi pled guilty to one count of possession with intent to distribute cocaine, 21 U.S.C. § 841(a)(1), and was sentenced to five years imprisonment and a special parole term of three years. On appeal Kerdachi maintains, alternatively, that the government failed to honor its plea agreement or, if the government did not do so, he misunderstood the agreement and his guilty plea was not voluntary. Finding a serious question raised as to the voluntariness of the plea, we vacate the conviction and remand.

### Facts

Kerdachi pled guilty at a re-arraignment and during the Fed.R.Crim.P. 11 proceedings this colloquy occurred prior to the court accepting the plea:

THE COURT: Is your willingness to plead guilty in any way the result of any discussions you or your attorney may have had with the United States Attorney? In other words, has there been any plea bargain in this case?

MR. LONGORIA [prosecutor]: Yes, Your Honor, there has.

THE DEFENDANT: Yes, Your Honor.

THE COURT: Let's put it on the record.

MR. LONGORIA: Your Honor, the agreement is that if Mr. Kerdachi pleads guilty to Count 3 of the indictment and persists in that plea, the government will dismiss Counts 1 and 2 against Mr. Kerdachi at the time he is sentenced.

THE COURT: All right. Is that your understanding, Mr. Kerdachi?

THE DEFENDANT: Yes, sir.

THE COURT: Yours, Mr. Turner?

MR. TURNER [defense counsel]: Yes, sir. In addition, the government has indicated to me that they would file no

sentencing memorandum asking for any particular appropriate sentencing from this court, that they would merely stand moot [sic] on the issue of punishment.

MR. LONGORIA: That's not exactly right. I was not under that impression at all. If asked to take a position, Your Honor, at sentencing, I may and I reserve the right to take a position. So if that's going to be a part of the plea bargain, we can't go through with that.

If the defense attorney is going to have his right to speak at sentencing, I reserve the right to speak myself.

THE COURT: All right. Does that blow up the bargain? I'm not supposed to participate in any of these discussions.

MR. LONGORIA: Well, Your Honor, I understand. These are not discussions. I'm just—I want to make sure that the defendant understands that I made no—I mean, that's the agreement. It's contained in the plea of guilty form.

This is the agreement between myself and counsel. And normally I don't infringe on the prerogatives of the court by saying what I think that defendant should receive. I think the court knows that. But I am not going to say here that I'm not going to say anything, because that's just not what we do.

MR. TURNER: For the record, Your Honor, if I could clear that up, I wasn't implying that the government would not be heard at sentencing. My understanding in my negotiations with Mr. Longoria as to our agreement to plead guilty to Count 3, we had an informal discussion with Mr. Longoria wherein we did not debrief but we certainly told him our participation, and my understanding was that he would not recommend to this court either incarceration or probation; that he would leave that under Rule 11 as discretion and a matter of this court and the prerogative of this court.

And I didn't mean to imply that he would not be able to be heard or present the government's views on that.

MR. LONGORIA: That's correct.

THE COURT: All right.

MR. LONGORIA: Certainly nothing we would say would be binding on the court anyway, so—

THE COURT: Well, all right. The court will accept that.

This scenario reflects a statement of the plea agreement by the prosecutor which was initially accepted by the defendant but not accepted by defense counsel when asked by the court to confirm his understanding. Defense counsel added the condition that the government would stand mute and offer no sentencing recommendation. This addition was immediately challenged by the prosecutor. Following the demonstration of uncertainty and confusion as to the discussions and possible agreement between counsel, and an arguably unclear resolution of that uncertainty, there was a critical lapse in the Rule 11 proceedings. The district court did not address Kerdachi personally and ask whether he shared his counsel's understanding of the sentencing recommendation condition and, if so, whether that condition was a significant factor in his decision to plead guilty. Only Kerdachi could have answered that essential question. It was not asked. It should have been.

Several weeks later, at a sentencing hearing before a judge other than the one who had accepted the guilty plea, the government recommended "that KERDACHI be assessed a term of ten (10) years in custody of the Attorney General or his authorized representative, and fined $20,-000.00, to be followed by a Special Parole Term of five (5) years." Neither Kerdachi nor his counsel objected to the sentencing recommendation and the court imposed the sentence as noted.

### Analysis

■ Disposition of this case is governed by *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), and its progeny. *Santobello* teaches that when a guilty plea "rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such

promise must be fulfilled." Id. at 262, 92 S.Ct. at 499. As we observed in *United States v. Avery*, 621 F.2d 214, 216 (5th Cir.1980): "This circuit has applied the principles enunciated in *Santobello* by requiring that the government adhere strictly to the terms and conditions of the plea agreements it negotiates with defendants. *United States v. Shanahan*, 574 F.2d 1228 (5th Cir.1978); *United States v. Grandinetti*, 564 F.2d 723 (5th Cir.1977)." *See also McKenzie v. Wainwright*, 632 F.2d 649 (5th Cir.1980).

■ From this linchpin we must determine whether Kerdachi's guilty plea was knowingly and voluntarily entered, with specific focus on the plea agreement. The voluntariness of a guilty plea is one of three core concerns of Rule 11. The failure of the trial court to address a core concern requires an automatic vacating of the plea conviction. *United States v. Dayton*, 604 F.2d 931 (5th Cir.1979) (en banc).[1] The court began to address the voluntariness of the plea when it asked Kerdachi and his counsel for their reaction to the prosecutor's rendition of the plea agreement. The failure came when the court did not elicit Kerdachi's understanding of the term disputed by his counsel and the part that term played, if any, in his guilty plea decision.

The Supreme Court's approval of plea agreements and the increasing use of this practice has impacted on guilty plea proceedings. Fed.R.Crim.P. 11 is the product of a concerted effort to ensure that guilty pleas are free of taint affecting their validity and fairness. In 1975 the Rule was rewritten principally "to cope with the dangers that have accompanied the increased use of plea bargains in recent years...." *United States v. Robertson*, 698 F.2d 703, 708 (5th Cir.1983). As we observed in *Robertson:*

> The purpose of the revisions was to guarantee that the defendant who pleads guilty or *nolo contendere* is informed of the consequences of his plea and to bring

the arrangements surrounding the plea into the open. (Citations omitted).

> As it applies to guilty pleas, Rule 11 requires the trial court to ... determine whether the plea is voluntary by inquiring into the defendant's state of mind *and the terms of the agreement, if any, that induced the defendant to plead guilty.* (Emphasis added.)

698 F.2d at 708.

■ When it became apparent that a plea agreement was involved in Kerdachi's entry of a guilty plea, the trial court was obliged to become informed as to all of the material terms of the agreement, after which the court was required to determine on the record that Kerdachi had an adequate understanding of those terms. A guilty plea is not voluntary if it is based on a misapprehension of a significant term of a plea agreement. When the dispute between the prosecutor and defense counsel became manifest, it was incumbent upon the trial court to address Kerdachi personally and determine what Kerdachi understood about the government's role during the sentencing process and the part that understanding played in his decision to enter a plea of guilty. Absent that inquiry "into the defendant's state of mind and the terms of the agreement, if any, that induced the defendant to plead guilty," id., the plea cannot be deemed as voluntarily entered.

■ We do not suggest that the trial court should become involved in the plea bargain discussions. The trial court correctly declined to so participate. *See United States v. Adams*, 634 F.2d 830 (5th Cir.1981). But when a question arises about a material term of the agreement, the trial court must ascertain the defendant's understanding of the term in question and the significance of that term in the plea decision.

We vacate the conviction and sentence on the plea of guilty and hold void all subsequent orders, including the order of dis-

---

1. Because a failure to consider a core concern requires automatic reversal of the guilty plea conviction, we need not consider counsel's failure to object at the sentencing hearing.

missal of Counts 1 and 2 of the indictment. The parties are returned to the status quo ante the tender of the guilty plea.

Judgment VACATED and REMANDED.

JERRE S. WILLIAMS, Circuit Judge, dissenting:

I regret that I am constrained to dissent from the holding of the Court in this case. In my reading of the record a plea bargain was reached, it was well understood by both parties, the accused agreed in person to it, no objection was made to it, and the agreement was binding.

As I read the critical words in the transcript reported in the majority opinion, the discussion concerning the government's role at the time of sentencing was no more than a clarification of usual practices which obviously had been discussed between the parties at the time the defendant and his counsel were deciding whether to accept the plea bargain or not. The discussion ended in complete agreement, without the slightest indication that there had actually been a misunderstanding, and no objection was made.

Under these circumstances the objection now raised seems to me to be purely an afterthought. This clarifying informal discussion of the role that the federal prosecutor might play in the sentencing should not be used to destroy a valid plea bargain made by the parties. The fact that the defense counsel did not object is obviously not controlling because objection is not necessary when the error is fundamental. It does show, however, that there was no misunderstanding. It also shows that the institution of the discussion by the defense counsel turned out not to be for the purpose of adding something to the plea bargain but to clarify. What is critical is that at the conclusion of the colloquy nothing had been added to or taken away: the plea bargain remained as before. Under these circumstances it is overly protective of the rights of the accused to require that he again be questioned personally as to his acceptance.

Plea bargains create difficult problems and carry perils for both the accused and the accuser. But it simply stretches things too far to find difficulties and perils in this record. In my view this afterthought search of the record for some possible way to obtain a reversal should not be allowed to bear fruit. I would affirm the judgment of the district court.