No. 63,038

STATE OF KANSAS, *Appellee,* v. TYRONE CRAWFORD, *Appellant.*
(787 P.2d 1180)

Opinion filed March 2, 1990.

*Thomas Jacquinot,* assistant appellate defender, argued the cause, and *Jessica R. Kunen,* chief appellate defender, was with him on the briefs for appellant.

*Randy M. Hendershot,* assistant district attorney, argued the cause, and *Gene M. Olander,* district attorney, and *Robert T. Stephan,* attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

SIX, J.: The issue in this criminal appeal is whether the State breached its plea agreement with defendant Tyrone Crawford.

We hold that no breach occurred and affirm the sentence imposed.

## Facts

The facts are not in dispute. Crawford was originally charged with one count of aggravated kidnapping, two counts of rape, one count of aggravated robbery, and one count of aggravated burglary. The charges stemmed from an incident in which two men broke into the home of an elderly Topeka woman, stole her purse and jewelry, and forced her at gunpoint into her car. The woman was raped once in the car by one of the intruders, whom she later identified as Crawford. After a long drive, the woman was taken to a basement. Her arms, legs, and mouth were taped with duct tape. The woman was held in the basement for approximately 20 hours, during which time the same man, whom she again identified as Crawford, raped her a second time. The following

evening, the two men placed her in the trunk of her car, drove to a remote location near Clements, Kansas, and left the woman along a country road. Her car was later recovered in Wichita.

The basement in which the woman was held was later identified through a Crime Stoppers tip. Crawford was linked to the crime through the identification of the basement and an interview with the people who rented the house where the basement was located. Although the woman was not wearing her glasses when the two men abducted her and her head was covered with a towel during most of her ordeal, she testified at the preliminary hearing that she was able to see the man who held the gun to her head and raped her on different occasions. She positively identified that man as Crawford.

Crawford was bound over for trial and subsequently entered into plea negotiations with the State. At the plea hearing the prosecutor described the plea agreement that had been reached:

"As a result of our negotiations, the State would move to dismiss all charges except Counts 1 and 4, Count 1 is Aggravated Burglary, a C felony, Count 4 is Rape, a B felony. It is my understanding the defendant will enter a plea to Counts 1 and 4 of the Complaint. In addition to that, the State will not request imposition of the Habitual Criminal Act, and we would note for the Court that the provisions of the Mandatory Handgun or Firearm Sentencing statute would not apply in this case. The State will not oppose these two sentences running concurrently internal, one with the other, in regard to the minimum and maximum ends of the sentencing spectrum. Of course, I have provided the Court with a note on that earlier in regard to the top end or maximum end of the sentences in each of these cases. The State would not request over twenty years on the top end of the sentencing. *In regard to the minimum end of the spectrum, the State would not request a set time in regard to the minimum end of the sentencing spectrum. In addition to which the State would reserve the right to present comment concerning the factors under the sentencing statute, K.S.A. 21-4606.*" (Emphasis added.)

Crawford pled no contest to the aggravated burglary and rape charges. He agreed that the evidence presented at the preliminary hearing was sufficient to establish a factual basis for the crimes charged. The court advised Crawford of his right to a jury trial, his privilege against self-incrimination, and his right to confront the witnesses against him. The court also advised that, by pleading no contest, Crawford was giving up these rights. Crawford was informed by the court of the minimum and maximum

sentences for each of the charges and that these sentences were subject to the court's discretion. Regarding the maximum sentence for the rape charge, the court made the following comment: "The State will not request more than twenty, but it is still up to the Court. That's what you are saying on the sentencing because this is merely a recommendation."

At the sentencing hearing defense counsel made the following remarks on Crawford's behalf:

"The District Attorney offered a plea agreement which he [Crawford] felt [was] in his best interests. He [Crawford] has Your Honor, never admitted to me that he ever committed these offenses which makes it very, very difficult to argue in the sentencing and in the fact that his co-defendant went to trial on basically the same facts and was found not guilty. The other individual that was involved in this received a plea agreement and is now roaming free. Mr. Crawford for his own personal reasons simply did not want to run the risk of having to spend the rest of his life in the jail so he entered into this plea agreement with the criteria for imposing minimum sentences."

The State commented that, although it was not opposing concurrent sentences and was not requesting a maximum sentence over 20 years, the court should examine the defendant's prior history, the extent of harm, and whether the defendant intended to harm. Counsel invited the court to look at the sentencing factors in K.S.A. 21-4606(2)(a), (b), and (c). The court made the following statement prior to imposing sentence:

"I've never known of a rape that wasn't brutal and I'll be quite blunt with you, it is the worst—it is the most terrible crime that I've seen based on the affidavit and the statements of the victim in relationship to the testimony given at the preliminary hearing. I have examined the criteria set out in 21-4606 and I understand the defendant's continual denial in relationship to this act. This was not just an act, this was a series of acts over an extended period of time from the point of being taken by gun point, being put in—to being raped in an automobile, to being put in a trunk, being left 18 hours to be raped again, and then being discarded like a dirty shirt in a field somewhere. The Court was literally outraged by this kind of conduct, it just cannot be. And after careful consideration of all of the factors, review of the presentence report, considering the criteria, understanding the plea negotiations and weighing those which I do consider carefully . . . ."

The court sentenced Crawford to the maximum sentence of 5 to 20 years for aggravated burglary and the maximum sentence

of 15 years to life for rape and ordered the sentences to run consecutively.

## Breach of the Plea Agreement

Crawford asserts that the State breached its agreement to recommend a maximum controlling term of 20 years and to recommend concurrent sentences on the two charges. The State contends that, because Crawford did not raise this issue before the trial court, it is not properly before this court on appeal. At sentencing, the court asked Crawford if he understood that the court is not bound by the plea bargain and Crawford replied affirmatively.

Neither Crawford nor his attorney objected to the remarks made by the prosecutor at the sentencing. "The defendant cannot raise points on appeal which were not presented to the trial court." *State v. Holley*, 238 Kan. 501, 508, 712 P.2d 1214 (1986). However, "one who pleads guilty or nolo contendere is not precluded by K.S.A. 22-3602 from taking a direct appeal *from the sentence imposed.*" *State v. Harrold*, 239 Kan. 645, 649, 722 P.2d 563 (1986).

The scope of review where a defendant appeals from the sentence imposed was stated in *State v. Doile*, 244 Kan. 493, 503-04, 769 P.2d 666 (1989):

"A sentence imposed by a trial court will not be disturbed on the ground it is excessive, provided it is within the limits prescribed by law and within the realm of discretion on the part of the trial court, and the sentence is not the result of partiality, prejudice, oppression, or corrupt motive."

Crawford argues that the State nullified its own recommendation pursuant to the plea bargain by the prosecutor's remarks to the court concerning the K.S.A. 21-4606 factors. The State specifically reserved the right to comment on those factors in the plea bargain. At the sentencing hearing the prosecutor made the following remarks:

"Your Honor, in regard to comment by the State, as the Court knows from the record in this case we are not requesting that the Court impose the habitual criminal act. We are further not requesting that the Court impose the mandatory firearms time under the requisite statute because the gun is not applicable in this particular case as we cannot prove which one of those gentlemen who was involved in this was in fact holding a gun as required by statute and case law. Further, we're not opposing the concurrent sentences and in regard to the maximum end in this case we're not re-

questing that the Court impose over 20 years. I think it is however for the Court to look at the factors in K.S.A. 21-4606 including: the prior history and record of the defendant; the extent of harm that the defendant caused in this particular case, which I'm sure the Court can tell from the affidavit was more than substantial; whether the defendant intended that his conduct would cause harm to the victim and society, and certainly there can be no argument that that harm was not intended. The Court should also consider the degree of the defendant's provocation; the substantial grounds to excuse or justify the defendant's conduct, whether the victim induced or facilitated the crime's commission; and whether the defendant can compensate the victim. All those are factors that the Court by statute and by case law ought to look at. I think it's quite clear the factors d), e), f), and g) under the statute simply have no relevance under our particular set of circumstances here. I think the Court should look at factors a), b), and c): the defendant's prior history, the extent of harm, and whether the defendant intended to harm. And certainly b) and c) under our circumstances here are the most significant.

"THE COURT: Is there any mitigating circumstances that the State is aware of, and I'll have Mr. Bandy [defense counsel] give his arguments, that indicate maximum of 20 years or is this just a plea bargain?

"MR. HENDERSHOT [counsel for the State]: That was a plea bargain situation, Your Honor. Those are negotiations. The State is aware of no mitigating circumstances."

The State fulfilled all of its promises pursuant to the plea bargain. At the plea hearing, the court asked Crawford if the State had correctly represented the contents of the plea bargain or had made any other promise to him. He responded that the contents of the plea bargain were correctly stated and that no other promises had been made to him. Crawford was also informed at both the plea hearing and the sentencing hearing that the court was not bound by the State's recommendation.

Crawford argues that the State breached its promises to recommend concurrent sentences and a maximum sentence of 20 years by the manner in which the prosecutor commented on the factors set forth in K.S.A. 21-4606 and upon Crawford's conduct. Crawford cites *Santobello v. New York*, 404 U.S. 257, 30 L. Ed. 2d 427, 92 S. Ct. 495 (1971). In *Santobello*, the defendant was charged with two felony counts. He agreed to plead guilty to a lesser included offense. The prosecutor agreed to drop the two original charges and make no recommendation regarding the sentence to be imposed. By the time the sentencing hearing was held, however, a different prosecutor was assigned to the case.

The new prosecutor recommended the maximum one-year sentence. *Santobello* is distinguishable from the case at bar. The State in *Santobello* clearly breached one of its promises to the defendant.

In *United States v. Benchimol*, 471 U.S. 453, 85 L. Ed. 2d 462, 105 S. Ct. 2103 (1985), Benchimol pled guilty to one count of mail fraud. Pursuant to a plea bargain, the government agreed to recommend probation on the condition that restitution be made. Although the government stated the bargained-for recommendation, it " 'made no effort to explain its reasons for agreeing to recommend a lenient sentence but rather left an impression with the court of less-than-enthusiastic support for leniency.' " 471 U.S. at 455 (quoting the Court of Appeals opinion, 738 F.2d 1001, 1002 [9th Cir. 1984]). The Supreme Court held that it is not necessary for the government to make its recommendation with a certain amount of enthusiasm, nor is it necessary for the government to give its reasons for its recommendation as long as the recommendation agreed upon is given.

The Court in *Benchimol* distinguished *United States v. Grandinetti*, 564 F.2d 723 (5th Cir. 1977), as a situation in which the prosecutor actually expressed reservations about the recommendation to which the government had agreed. In *Grandinetti*, the defendant was on probation from a drug-related conviction when he was arrested for counterfeiting. Plea negotiations ensued and Grandinetti agreed to plead guilty to one count, with two other counts being dropped. The prosecutor also promised to recommend five years on the counterfeiting charge, and five years on the violation of probation charge, to run concurrently. Grandinetti was subsequently sentenced to five years for counterfeiting.

At the time of the probation revocation hearing, the government was represented by an attorney other than the one who had negotiated the plea bargain. Upon reviewing the plea agreement, the new government attorney expressed his reservations about the concurrent sentence recommendation to the court. The court ordered the defendant to serve the balance of his previous sentence consecutive to the sentence for counterfeiting. The Court of Appeals said, "The government's attorney in the case before us was not only an unpersuasive advocate for the plea agreement, but, in effect, argued against it." 564 F.2d at 727.

The court also noted that "[w]hether the prosecutor's halfheartedness in presenting the recommendation was a factor in the district court's imposing a sentence more severe than that 'recommended' is a matter into which we need not inquire." 564 F. 2d at 726 (citing *Santobello*). The Court of Appeals remanded the case for a new revocation hearing before a different district judge.

While principles of contract law cannot be blindly incorporated into the area of plea bargaining, they provide a useful analytical framework. *U.S. v. Giorgi*, 840 F.2d 1022, 1025 (1st Cir. 1988); *United States v. Ocanas*, 628 F.2d 353, 358 (5th Cir. 1980), *cert. denied* 451 U.S. 984 (1981); *State v. Smith*, 244 Kan. 283, 285, 767 P.2d 1302 (1989). In the case at bar, the State specifically reserved its right to comment on the K.S.A. 21-4606 factors. Crawford was aware that the trial court was not bound by the recommendation of the State. The State did, in fact, make the recommendation that it promised. The comments of the prosecutor did not reach the level of the comments made in *Grandinetti*. Although the sentences imposed by the trial court were the maximum sentences possible, they were within the statutory limits. The Habitual Criminal Act was not invoked. Crawford did not object to the State's comments at the sentencing hearing regarding the K.S.A. 21-4606 factors.

Affirmed.