[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-12517
Non-Argument Calendar

_____

D.C. Docket No. 1:17-cr-00060-DHB-BKE-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CALVIN DEVEAR LAWYER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(May 9, 2019)

Before TJOFLAT, JORDAN, and GRANT, Circuit Judges.

PER CURIAM:

After Colonel Calvin Lawyer pleaded guilty to one count of conspiracy to

commit offenses against the United States, the district court imposed a stiffer

sentence than Lawyer had hoped for.  On appeal he seeks resentencing before a

different judge.  But because he cannot show that the government breached his plea agreement and because he knowingly and voluntarily waived his right to appeal, we dismiss in part and affirm in part.

I.

In 2006, Calvin Lawyer—then serving as a U.S. Army Colonel at Fort Gordon, Georgia—asked retired Lieutenant Colonel Dwayne Fulton for help setting up a business to bid on government contracts.  Fulton helped Lawyer set up a new company, the Communications, Research, Engineering, and Consultants Group ("CREC Group").  In a successful effort to qualify for a special program designed to help small, disadvantaged business owners obtain government contracts by "fast tracking" their bids—also known as achieving "8(a) status"— Fulton and Lawyer made false representations in a Small Disadvantaged Business Certification form.  Then, after CREC Group won large government contracts, Lawyer let Fulton provide the labor through Fulton's employer, Kratos Technology and Training Solutions Corporation, a company that would have been ineligible to directly bid on the contracts because of its size.  Lawyer and Fulton did not disclose their pass-through labor arrangement to the government.

Lawyer retired from the military in 2008 after 26 years of service.  Between 2008 and 2014, Lawyer paid thirteen bribes totaling almost $200,000 to Anthony Roper, an active duty Lieutenant Colonel who had worked under Lawyer at Fort

Gordon and had taken Lawyer's job (and been promoted to Colonel) when Lawyer retired. In return, Roper steered contracts toward CREC Group and sent Lawyer confidential government information, such as cost estimates, that offered Lawyer an advantage against other competitors. In late 2015, after Lawyer, Fulton, and Roper learned of an investigation into their scheme, they tried to cover it up by creating back-dated fraudulent invoices in an attempt to legitimize the bribe payments. All told, Lawyer fraudulently obtained over $54 million worth of government contracts and profited at least $5.4 million.

In 2017, the government charged Lawyer with one count of conspiracy to commit offenses against the United States—specifically bribery, wire fraud, and false statements. *See* 18 U.S.C. § 371 (conspiracy); *id.* § 201(b) (bribery); *id.* § 1343 (wire fraud); *id.* § 1001 (false statements). Lawyer entered into a written plea agreement with the government that included an appeal waiver and pleaded guilty. The district court sentenced Lawyer to five years' imprisonment (the statutory maximum), three years' supervised release, a $100 special assessment, and a $100,000 fine. On appeal, Lawyer argues that the government breached its obligations under the plea agreement; that he did not knowingly and voluntarily agree to the appeal waiver; that his sentence is procedurally and substantively unreasonable; and that the district court should not have imposed the $100,000 fine.

II.

We review de novo "whether the government's undisputed conduct breached the plea agreement." *United States v. Hunter*, 835 F.3d 1320, 1324 (11th Cir. 2016). We also review de novo the validity of an appeal waiver. *United States v. Johnson*, 541 F.3d 1064, 1066 (11th Cir. 2008).

III.

A. *Breach of the Plea Agreement*

Because "traditional contract principles generally apply to plea agreements," an appeal waiver cannot bar a defendant's claim that "the government breached the very plea agreement which purports to bar him from appealing or collaterally attacking his conviction and sentence." *United States v. Puentes-Hurtado*, 794 F.3d 1278, 1284 (11th Cir. 2015). "Whether the government violated the agreement is judged according to the defendant's reasonable understanding at the time he entered his plea." *Hunter*, 835 F.3d at 1324 (quoting *United States v. Boatner*, 966 F.2d 1575, 1578 (11th Cir. 1992)). We apply an "objective standard" to determine whether a breach occurred and we will not read the plea agreement in a "hyper-technical" or "rigidly literal" manner. *Id.* (citations omitted).

Lawyer makes two claims of breach, both related to the government's conduct in filing a motion for downward departure based on Lawyer's substantial assistance. The relevant provision in Lawyer's plea agreement states:

4

> The government, in its **sole discretion**, will decide whether Defendant's cooperation qualifies as "substantial assistance" pursuant to U.S.S.G. § 5K1.1 or Fed. R. Crim. P. 35 and thereby warrants the filing of a motion for downward departure or reduction in Defendant's sentence.  If such a motion is filed, the Court, in its **sole discretion**, will decide whether, and to what extent, Defendant's sentence should be reduced.  The Court is not required to accept any recommendation by the government that the Defendant's sentence be reduced.  (emphasis in original)

Lawyer claims that, first, the government "breached the plea agreement by filing the § 5K1.1 motion, but then arguing that the assistance was only moderate and was not significant or very significant."  He claims that a reasonable defendant in his position "would not have understood that the government would be able to further classify and implicitly downgrade his substantial assistance when presenting the § 5K1.1 motion to the court."  Second, he says that the government "further breached the plea agreement by deliberately being an unpersuasive advocate for the § 5K1.1 motion, as it effectively argued against the grant of the motion."  Neither argument is persuasive.

First, nothing in the plea agreement would have led a reasonable defendant to believe that the government was forbidden from characterizing the nature of Lawyer's assistance.  Here, the government ranked Lawyer's assistance as "moderate" on a scale of exceptional, very significant, significant, moderate, and

5

minimal.[1]  The plea agreement stated that the government, in its "sole discretion," would determine whether Lawyer's cooperation "qualifie[d] as 'substantial assistance' pursuant to U.S.S.G. § 5K1.1."  And § 5K1.1 specifically contemplates a governmental characterization of the nature and extent of a defendant's assistance: it provides that "[t]he appropriate reduction shall be determined by the court for reasons stated that may include . . . the court's evaluation of the significance and usefulness of the defendant's assistance, *taking into consideration the government's evaluation of the assistance rendered*" and "the nature and extent of the defendant's assistance."  U.S.S.G. § 5K1.1 (emphasis added).  A reasonable defendant in Lawyer's shoes should therefore expect the government to "evaluat[e]" the "assistance rendered"—exactly what the government did here.  The plea agreement provided for a (potential and discretionary) § 5K1.1 motion, which carries with it the government's assessment of how helpful Lawyer really was; the government never promised a glowing letter of recommendation, and § 5K1.1 did not obligate it to provide one.

Second and relatedly, a reasonable defendant would not have understood Lawyer's plea agreement to require the government to zealously advocate in favor of a downward departure.  "[I]n determining whether the government has breached

---

[1] Unbeknownst to Lawyer and his counsel, using this five-level "McCullough scale" to describe a defendant's assistance is apparently standard practice in the Southern District of Georgia.

a plea agreement, we must first determine the scope of the government's promises." *United States v. Copeland*, 381 F.3d 1101, 1105 (11th Cir. 2004). The plea agreement in this case left any decision about the propriety of a § 5K1.1 motion—which, as noted, carries with it the government's characterization of the nature of the assistance rendered—to the government's "sole discretion." Lawyer's position is essentially that the filing of such a motion is an on/off switch: that the government may not have had to file a downward departure motion, but that once it did, it was required to advocate persuasively in favor of it. But Lawyer's binary understanding of § 5K1.1 motions is inconsistent with that section's recognition that the government will assess the value of a defendant's assistance and that the court will consider multiple factors in deciding what an "appropriate reduction" is in each case.

The cases that Lawyer cites do not compel a contrary conclusion. In *United States v. Grandinetti*, the court found that the government breached its agreement to recommend concurrent sentences because the government attorney expressed doubt as to the "legality" and "propriety" of the sentence and thereby "was not only an unpersuasive advocate for the plea agreement, but, in effect, argued against it." 564 F.2d 723, 725–27 (5th Cir. 1977). The court held that "the defendant did not receive the benefit of his bargain—that benefit being a forceful and intelligent

7

recommendation for concurrent sentences." *Id.* at 727.[2]  Similarly, in *United States v. Taylor*, the government agreed to recommend a ten-year sentence in exchange for a plea but then "affirmatively supported a position inconsistent with the plea agreement" by taking a position on the defendant's relevant conduct that resulted in a guideline range exceeding ten years.  77 F.3d 368, 371 (11th Cir. 1996).  The court held that this constituted breach because "[i]t was entirely reasonable for [the defendant] to understand the government's promise to recommend a ten-year sentence as including a promise not to advocate that the court adopt a position that would require a sentence longer than ten years."  *Id.* at 370.[3]

Both *Grandinetti* and *Taylor* dealt with a plea agreement that required the government to make a specific recommendation—concurrent sentences in *Grandinetti* and a ten-year sentence in *Taylor*.  Here, there was no such requirement: the plea agreement left to the government's "sole discretion" whether

---

[2] The Supreme Court later rejected an interpretation of *Grandinetti* that would require "enthusiastic" advocacy for recommendations that the government agrees to make, instead reading *Grandinetti* more modestly as applying to situations where "the Government attorney appearing personally in court at the time of the plea bargain expressed personal reservations about the agreement to which the Government had committed itself." *United States v. Benchimol*, 471 U.S. 453, 456 (1985) (per curiam).  The Court reasoned that "[w]hen the Government agrees pursuant to Rule 11(e) to make a recommendation with respect to sentence, it must carry out its part of the bargain by making the promised recommendation; but even if Rule 11(e) allows bargaining about degrees of enthusiasm, there appears to have been none here." *Id.*

[3] *Taylor* was decided before the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), rendered the Sentencing Guidelines advisory.

to file a downward departure motion at all, and even once the government decided to do so, § 5K1.1 made clear that the government would also communicate its views regarding the extent and nature of Lawyer's cooperation.  Based on the text of the agreement and the nature of a § 5K1.1 motion, Lawyer simply did not bargain for the enthusiastic downward-departure advocacy that he now claims the plea agreement required.  *Cf. United States v. Forney*, 9 F.3d 1492, 1499–1500 (11th Cir. 1993) (government does not breach agreement to "consider" a § 5K1.1 motion when it fails to file one even after defendant cooperates).

## B. Appeal Waiver

An appeal waiver is enforceable if the defendant knowingly and voluntarily entered into it.  *United States v. Bushert*, 997 F.2d 1343, 1350 (11th Cir. 1993).  To show that a waiver was knowing and voluntary, the government must demonstrate either 1) that "the district court specifically questioned the defendant concerning the sentence appeal waiver during the Rule 11 colloquy" or 2) that "it is manifestly clear from the record that the defendant otherwise understood the full significance of the waiver."  *Id.* at 1351.

Lawyer's plea agreement contained an appeal waiver with three exceptions: if "the court enters a sentence above the statutory maximum," if "the court enters a sentence above the advisory Sentencing Guidelines range found to apply by the court at sentencing," or if "the Government appeals the sentence."  Lawyer does

not contend that any of those three conditions have been met.  Instead, he claims—in a footnote in his opening brief, and more extensively in reply—that his waiver was not knowing and voluntary because "[w]hile the district court generally described the plea waiver and asked Col. Lawyer if he understood the plea agreement, the district court did not 'specifically question[]' Col. Lawyer about the appeal waiver."

That argument is belied by the transcript of Lawyer's plea colloquy.  The district judge, in summarizing selected provisions of Lawyer's plea agreement, explained the terms of the appeal waiver:

> The Defendant has waived any right to appeal from any sentence imposed on any ground.  There are three exceptions: One, if the sentence exceeded the statutory maximum—that is sort of a given—if the sentence exceeds the advisory guideline range determines [sic] by the Court at sentencing, or if the government appeals.

After explaining a few other provisions, the judge asked whether he had "outlined the Plea Agreement in the more basic and essential features in the way that you understand it," whether Lawyer "underst[ood] the entire agreement," and whether Lawyer understood "[a]ll of its details."  Lawyer answered "yes" to all three questions and further affirmed that no one had made any "outside promises" or guarantees about his sentence to persuade him to plead guilty.

Lawyer's plea colloquy plainly demonstrates that Lawyer, who holds a master's degree and served as an Army Colonel, knowingly and voluntarily

10

relinquished his right to appeal.  Lawyer relies on this Court's decision in *Bushert*, but there, the district court confusingly told the defendant that he was "waiving his right to appeal the *charges* against him" but that he "might have the right to appeal his *sentence* under some circumstances."  997 F.2d at 1352.  The *Bushert* court reasoned that the district court's statement "did not clearly convey to Bushert that he was giving up his right to appeal under *most* circumstances" and that the court's "generalization that the defendant could appeal his sentence under some circumstances was insufficient."  *Id.* at 1352–53.  Here, by contrast, the district court clearly and explicitly stated the terms of Lawyer's sentence appeal waiver, and it confirmed that Lawyer understood "the entire agreement" in "[a]ll of its details."  We have enforced appeal waivers in similar circumstances, where "the waiver provision was referenced during [the defendant's] Rule 11 plea colloquy and [the defendant] agreed that she understood the provision and that she entered into it freely and voluntarily."  *United States v. Weaver*, 275 F.3d 1320, 1333 (11th Cir. 2001).  Here, as there, Lawyer's "waiver is valid."  *Id.*

\*     \*     \*

Lawyer raises other arguments about the propriety of his sentence, but we must dismiss them because an appeal waiver "includes the waiver of the right to appeal difficult or debatable legal issues or even blatant error."  *United States v. Grinard-Henry*, 399 F.3d 1294, 1296 (11th Cir. 2005) (per curiam).

11

**AFFIRMED IN PART AND DISMISSED IN PART.**