[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-13574

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

DAVID HAMILTON SHARPE,
a.k.a. David Dukkedoff,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia
D.C. Docket No. 4:20-cr-00016-RSB-CLR-28

_____

Before WILSON, LUCK, and LAGOA, Circuit Judges.

PER CURIAM:

Defendant-Appellant David Sharpe appeals his 292-month sentence, arguing the government breached its plea agreement to recommend 180 months. After careful review, we affirm his sentence.

## I.

A grand jury indicted Sharpe for conspiracy to possess with intent to distribute and distribute 50 grams or more of methamphetamine and other controlled substances, in violation of 21 U.S.C. §§ 841(a)(1) and 846 and 18 U.S.C. § 2 (Count 1) and possession of methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) (Count 38). Sharpe and the government entered a plea agreement. In exchange for pleading guilty to Count 1, the government agreed to dismiss Count 38 and recommend a sentence of 180 months' incarceration. The agreement also did not preclude "the government from providing full and accurate information to the Court and U.S. Probation Office for use in calculating the applicable Sentencing Guideline range."

The Probation Office prepared a Presentence Investigation Report (PSI) and calculated an advisory guideline range of 360 months to life imprisonment. Sharpe objected to the PSI and requested the Probation Office correct the criminal history score and make note of the recommendation in the plea agreement. The

government filed a notice that it had no objection or comment regarding the PSI.  All objections were resolved before the sentencing hearing, and the district court accepted the PSI and its findings.

Sharpe also moved for a downward variance, arguing that the government's 180-month recommendation served as a better advisory sentence.  The government did not respond.

At the sentencing hearing, the district court invited the government to present an argument regarding the appropriate sentence.  The government stated, "we did file—enter a plea agreement.  We had a joint, nonbinding recommendation where the United States was going to recommend—or is going to recommend the 15-year sentence of imprisonment."

Citing the PSI, the government then described Sharpe's "significant" criminal history and conduct.  It also mentioned mitigating factors such as his difficult childhood, early drug abuse, mental health issues, expulsion from ninth grade, and procurement of a General Education Development certificate.

The district court made two inquiries.  First, it asked whether Sharpe played a larger role in the conspiracy than a codefendant.  The government clarified that Sharpe played a "different role."  While the codefendant had more access to drugs through a cartel connection, Sharpe was "very good at coordinating deals" both inside and outside of prison through his gang involvement.  Second, recognizing the PSI contained statements from witnesses who claimed Sharpe managed drug distribution for multiple years,

the court asked if the quantity of drugs attributed to him in the PSI was limited to the drugs discovered in a single search of his home. The government confirmed this to be the case.

The district court ultimately sentenced Sharpe to 292 months' imprisonment. The court noted that it considered the parties' arguments, read the PSI, and weighed the factors in 18 U.S.C. § 3553(a). The court stated that it varied downward from the original guideline range because it found Sharpe's criminal history to be less substantial than was suggested, and a more appropriate guideline range was 292 to 365 months. Choosing the low end, the court cited the difficult life circumstances faced by Sharpe. Nonetheless, it explained that it found the recommended sentence of 180 months to be "far, far too low" given the seriousness of Sharpe's offense, the extent of his criminal history, and the sentences given to similarly situated defendants. The court went on to say that it

> appreciate[s] when parties come together and get a joint recommendation to the Court. It's helpful to the Court. It's one of the reasons that I took a close look at this case and that I did end up varying downward from the guideline range, but it's clear that I need to maintain the discretion in some instances to impose a higher sentence.

Neither party objected at that point, and Sharpe timely appealed.

## II.

"Whether the Government breached a plea agreement is a question of law, to be reviewed *de novo*." *United States v. De La Garza*, 516 F.3d 1266, 1269 (11th Cir. 2008). However, when a party fails to raise the issue before the district court, we review for plain error. *Id.* Federal Rule of Criminal Procedure 51(b) provides that "[a] party may preserve a claim of error by informing the court—when the court ruling or order is made or sought—of the action the party wishes the court to take, or the party's objection to the court's action and the grounds for that objection."

Sharpe urges us to review this issue de novo for two reasons. First, he makes the novel argument that, when plea agreements are broken, the defendant may prospectively preserve a claim or error by informing the government and the district court through written motion or oral argument that there is a joint recommendation for a particular sentence. Sharpe argues that since he did this, both the government and the district court were on notice of the government's duty to recommend the 180-month sentence, and the claim of error was preserved. Second, Sharpe argues that any attempt to object to the error after it was made would be futile, since the district court would already understand the government's true position regarding the sentence.

Both of Sharpe's arguments fail. Sharpe points to *Holguin-Hernandez v. United States*, 140 S. Ct. 762 (2020), to support the proposition that claims of error can be made prospectively. In *Holguin-Hernandez*, defense counsel made clear arguments in support

of a downward departure from the Sentencing Guidelines. *See* 140 S. Ct. at 765. Finding those arguments preserved the claim that the sentence was unreasonable, the Supreme Court stated that the "question is simply whether the claimed error was 'brought to the court's attention.' Here, it was." *Id.* at 766 (internal citation omitted).

Here, it was not. In *Holguin-Hernandez*, defense counsel wanted the district court to make a downward departure from the Sentencing Guidelines, so counsel argued for that. Here, Sharpe's counsel wanted the government to recommend and make arguments in favor of a 180-month sentence. Yet, all Sharpe's counsel did was acknowledge the plea agreement, stating "[the sentence] is jointly recommended by the parties, as evidenced in Paragraph 4 of [the] plea agreement and has been mentioned today by the United States." At no time did Sharpe's counsel bring to the court's attention his position that the government was required to argue for the 180-month sentence, nor did he ever object that the government was violating its obligations under the plea agreement. Simply put, Sharpe's counsel did nothing to put the government or the district court on notice that he had, or would have, any issue with the government's conduct. Thus, his objection was not properly preserved. *See Puckett v. United States*, 556 U.S. 129, 133–35 (2009) ("This limitation on appellate-court authority serves to induce the timely raising of claims and objections, which gives the district court the opportunity to consider and resolve them.").

Sharpe's argument that objecting to the government's breach in court would be futile is less novel and has already been rejected by the Supreme Court. Indeed, in *Puckett*, the Court addressed this very argument and found that our procedural rules still require a contemporaneous objection in this context for multiple reasons: it prevents defendants from adopting a wait-and-see approach to objections; it allows the district court to adjudicate unconceded breaches and create a record for appellate review; it permits some breaches to be cured upon objection; and it allows district courts to grant immediate remedies if established breaches cannot be cured. *See id.* at 139–40. Because the Supreme Court has considered this exact argument and rejected it, we must as well. Though, we also note that even if an objection were futile at the district court level, we have granted relief when claims are properly preserved. *See, e.g.*, *United States v. Hunter*, 835 F.3d 1320 (11th Cir. 2016).

Finding Sharpe did not preserve the claim of error for appeal, we review for plain error.

## III.

We find plain error when there is "(1) an error, (2) that is plain, (3) that affects the defendant's substantial rights, and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings." *De La Garza*, 516 F.3d at 1269. An error is plain if the explicit language of a statute, rule, or binding precedent makes the mistake clear and obvious. *United States v. Innocent*, 977 F.3d 1077, 1081 (11th Cir. 2020). A defendant's substantial

rights are affected if the error "affected the outcome of the district court proceedings." *Puckett*, 556 U.S. at 135 (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)). The defendant bears the burden of showing there is a reasonable probability the error was prejudicial, such that confidence in the outcome of the proceeding is undermined. *United States v. Iriele*, 977 F.3d 1155, 1177 (11th Cir. 2020).

"When a guilty plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *United States v. Rewis*, 969 F.2d 985, 988 (11th Cir. 1992). Thus, to determine whether a plea agreement was breached, "we must first determine the scope of the government's promises." *United States v. Copeland*, 381 F.3d 1101, 1105 (11th Cir. 2004). This is determined by the defendant's reasonable understanding of the government's promises at the time the agreement was signed. *Hunter*, 835 F.3d at 1324. This is an objective standard, asking "whether the government's actions are inconsistent with the defendant's understanding of the plea agreement, rather than reading the agreement in a hyper-technical or rigidly literal manner." *Id.* (internal quotation marks and citations omitted).

Here, Sharpe maintains he had a reasonable understanding that the recommendation included a promise to use reasonable efforts to advocate for a 180-month sentence; yet the government did not use reasonable efforts. He points out that the government did not object to the initial PSI nor respond after he moved for a

downward variance. Sharpe also contends that the government barely mentioned the recommendation at the sentencing hearing and failed to provide further explanation for why it was appropriate. Instead, the government discussed Sharpe's "significant" criminal history. In addition, Sharpe claims he was "blindsided" when the government took positions contrary to the recommended sentence when answering the court's questions. Specifically, Sharpe takes issue with the government failing to argue he was less culpable than his codefendant and agreeing that the PSI did not account for the drugs attributed to Sharpe by his coconspirators. All this, Sharpe argues, was plain error. Sharpe also contends that the government's conduct had a prejudicial impact on the final sentence.

We are unconvinced that these actions—even if they were mistakes—were so "clear" and "obvious" that they amounted to plain error. *Olano*, 507 U.S. at 734.

We consider first Sharpe's claim that the government took positions contrary to the plea agreement. Certainly, we have found that doing so constitutes a breach. Yet, our caselaw finds breach where the government took positions blatantly at odds with the plea agreements. *See, e.g., Hunter*, 835 F.3d at 1328 (finding breach when the government argued against a sentence reduction despite an agreement to recommend it); *United States v. Johnson*, 132 F.3d 628, 630–31 (11th Cir. 1998) (finding breach when the government argued in favor of a PSI determination that the defendant was accountable for 1400 pounds of marijuana despite an agreement that no more than 100 pounds would be attributed to him).

Here, the government promised it would recommend a sentence of 180 months but maintained that it could provide information to aid in calculating the Sentencing Guideline range. Unlike the cases above, the government here did not clearly and obviously take positions contrary to those commitments. Rather, it stated that it was recommending a 180-month sentence, it provided details about Sharpe's criminal history that were relevant to the Sentencing Guidelines, and it answered questions that were also relevant to the Guidelines. Indeed, the district court acknowledged that a joint recommendation was made and used the information from the hearing to discern a new, lower guideline range.

Neither are we convinced that it was objectively reasonable for Sharpe to believe that an agreement to recommend a sentence came with an implied promise to make arguments in favor of it. Sharpe relies on *United States v. Grandinetti* where, despite a promise to recommend a five-year sentence, the government stated it had a serious issue with the agreement, was unsure of its legality, but was nonetheless bound. 564 F.2d 723, 725 (5th Cir. 1977).[1] There, the district court stated that "the consideration which induced defendant's guilty plea was not simply the prospect of a formal recitation of a possible sentence." *Id.* at 726. Rather, the defendant was induced by "the promise that an Assistant

---

[1] We are bound by decisions of the former Fifth Circuit handed down before October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

United States Attorney would make a recommendation on sentencing," which "could reasonably be expected to be the sound advice, expressed with some degree of advocacy." *Id.*

Yet, the Supreme Court clarified in *United States v. Benchimol* that such advocacy is not required. 471 U.S. 453 (1985). There, the government agreed to recommend probation, but the PSI said the government would stand silent at the sentencing hearing. *Id.* at 454–55. When the defense counsel informed the court that the government was to recommend probation, the government merely confirmed that was accurate. *Id.* at 455. Relying on *Grandinetti*, the Fifth Circuit determined it was a breach to merely state the recommended sentence without explaining reasons for the agreement or providing more enthusiastic support. *Id.* Reversing, the Supreme Court stated that while "the Government in a particular case might commit itself to 'enthusiastically' make a particular recommendation to the court" or "to explain to the court the reasons for the Government's making a particular recommendation," there was no finding "that the Government had in fact undertaken to do either of these things here." *Id.*

Here, the government agreed to recommend a sentence of 180 months, and it did. Although it did not provide enthusiastic advocacy, it was not required to do so under the scope of the agreement. And unlike *Grandinetti*, the government made no suggestion that it took issue with the agreement. In other words, while the government may have done the bare minimum it was required to do, it nonetheless did the minimum.

Even if we were to find that Sharpe demonstrated the government committed plain error, Sharpe cannot show there is a reasonable probability that his substantial rights were affected. Sharpe argues that the government's actions had a profound impact on the sentencing, but the record casts doubt on that claim. The district court noted that it had considered the plea agreement but found the recommendation "far, far too low" because "180 months would simply not be sufficient" to reflect the severity of the offense, deter future conduct, promote respect for the law, provide just punishment, and protect the public. At best, we can only speculate whether Sharpe would have received a more lenient sentence had the government argued in his favor more vociferously. And therefore, we cannot conclude there is a reasonable probability that his substantial rights were prejudiced.

## IV.

Sharpe's claim that the government breached the plea agreement was not timely made, and therefore plain error review applies. Because Sharpe was unable to show the government obviously broke its promises or his substantial rights were clearly harmed, we cannot find the government plainly erred. Accordingly, we affirm.

**AFFIRMED.**