**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Peter Anthony TAYLOR, Defendant–
Appellant.**

No. 92–5016.

United States Court of Appeals,
Eleventh Circuit.

March 8, 1996.

Joel Hirschhorn, P.A., Coral Gables, FL, Thomas M. Dawson, Leavenworth, KS, for Appellant.

Roberto Martinez, John C. Schlesinger, U.S. Attys., Stephen J. Binhak, Linda Collins Hertz, Dawn Bowen, Asst. U.S. Attys., Miami, FL, for Appellee.

Before KRAVITCH, DUBINA and CARNES, Circuit Judges.

CARNES, Circuit Judge:

Peter A. Taylor appeals his conviction and sentence stemming from a plea agreement he entered into with the government. In that agreement, Taylor pleaded guilty to possession of marijuana with the intent to distribute in exchange for the government's promise to recommend at the time of sentencing that Taylor be sentenced to no more than ten

years of incarceration. Although Taylor raises several arguments on appeal, we need address only the issue involving the government's breach of the plea agreement. For the reasons discussed below, we hold that the government did breach the plea agreement, and that the proper remedy is to allow Taylor to withdraw his guilty plea.

## I. BACKGROUND

In April 1989, a grand jury indicted Taylor on six drug-related counts. The first three counts related to an alleged conspiracy to import cocaine, and the last three counts charged various crimes related to Taylor's alleged importation of marijuana. Moments before jury selection was to begin, the defense and prosecution announced to the court that they had negotiated a plea agreement. Although the plea agreement was never reduced to writing, the prosecutor stated the agreement to the court, as follows:

> The defendant is going to enter a plea of guilty to Count 5 of the indictment which charges him with possession of marijuana with the intent to distribute in the amount of [sic] excess of 100 kilograms, which is a five year minimum mandatory sentence.
>
> The Government in return for that plea is going to make a motion to dismiss Counts 1, 2, 3, 4, and 6 of the indictment. *The Government will be making a recommendation at the time of sentencing that the defendant be sentenced to a period of incarceration of ten years;* that's five above the minimum mandatory based upon the entire facts of the case.
>
> If the defendant provides assistance during the time between now and the time of sentencing, the Government has agreed that it will make a recommendation lower than ten years commensurate with the defendant's cooperation as it sees fit during that period of time.
>
> And of course all this is subject to the Court's acceptance of this plea agreement and the conditions thereof.

(Emphasis added.)

The district court went through the allegations in Count 5, and asked the government to describe the related evidence. The government explained in detail how Taylor and several others had intended to smuggle cocaine into the United States, but instead ended up smuggling marijuana because of the drug supplier's concerns about the riskiness of the smuggler's flight. Following the government's explanation, Taylor agreed that the government's proffer was accurate and he pleaded guilty to Count 5.

The court directed the probation department to prepare a presentencing investigation report ("PSI"). The PSI concluded that Taylor's intention and attempt to import 500 kilograms of cocaine were relevant conduct under the sentencing guidelines. As a result, the PSI calculated a range of 188–235 months in prison. Taylor filed objections to the PSI, arguing, in part, that the probation officer was wrong to include the cocaine-related activities as relevant conduct. In its written response to Taylor's objections to the PSI, the government stated: "The government was prepared to prove beyond a reasonable doubt that this defendant conspired to import cocaine into the United States. At sentencing, the government is prepared to prove the same by a preponderance of the evidence pursuant to Sentencing Guidelines § 6A1.3."

At the sentencing hearing, Taylor attempted to substitute new counsel and to obtain a continuance. In an attempt to persuade the court to allow the continuance, Taylor's prospective attorney raised a number of issues regarding the validity of the plea. The attorney stated that he needed more time to fully develop his arguments regarding the withdrawal of the plea. The court stated that it would not allow a continuance, and, in light of that ruling, Taylor continued with his previous counsel.

The government recommended, consistent with the plea agreement, that "the court impose a sentence of 120 months." The court nonetheless adopted the PSI's position on relevant conduct, which the government had supported in its response to Taylor's objections. That would have resulted in a guideline range of 188–235 months, except for the court giving Taylor a two-level reduction for acceptance of responsibility, which netted a sentencing range of 151 to 188

months. The court sentenced Taylor to 151 months of imprisonment followed by a five-year term of supervised release. The court also imposed a $25,000 fine and a $50 special assessment. Taylor timely filed this appeal.

After filing this appeal but before briefing, Taylor filed a motion with the district court to withdraw his plea, which the district court construed as a 28 U.S.C. § 2255 motion. The district court denied that motion without prejudice, stating that Taylor's direct appeal to this Court had divested the district court of jurisdiction over the motion. The parties then filed their briefs with this Court, embracing within this appeal the issues raised in Taylor's § 2255 motion.

## II. DISCUSSION

One of the issues raised in Taylor's § 2255 motion is whether the government breached its plea agreement with Taylor by advocating the PSI's position on related conduct, the adoption of which resulted in a sentence thirty-one months longer than the ten years the government had agreed to recommend. Resolution of that issue disposes of this entire appeal.

### A.

▮▮▮ The government is bound by any material promises it makes to a defendant as part of a plea agreement that induces the defendant to plead guilty. *E.g., Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971) ("[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."); *see also United States v. Rewis*, 969 F.2d 985, 988 (11th Cir.1992); *United States v. Boatner*, 966 F.2d 1575, 1578 (11th Cir. 1992); *United States v. Carrazana*, 921 F.2d 1557, 1568 (11th Cir.), *cert. denied*, 502 U.S. 865, 112 S.Ct. 191, 116 L.Ed.2d 152 (1991). Furthermore, "[w]hether the government violated the agreement is judged according to the defendant's reasonable understanding at the time he entered his plea." *Boatner*, 966 F.2d at 1578; *see also Rewis*, 969 F.2d at 988.

▮▮ In this case, the government unequivocally promised that it would "mak[e] a recommendation at the time of sentencing that the defendant be sentenced to a period of incarceration of ten years," with the only qualification being that it would recommend a sentence of less than ten years if Taylor provided assistance to the government (something that never occurred). It was entirely reasonable for Taylor to understand the government's promise to recommend a ten-year sentence as including a promise not to advocate that the court adopt a position that would require a sentence longer than ten years. Indeed, that is the only reasonable interpretation. Advocacy of a position requiring a greater sentence is flatly inconsistent with recommendation of a lesser sentence.

In the similar case of *Boatner*, we held that when the government's statements regarding the PSI are inconsistent with the plea agreement, the government has breached that agreement. 966 F.2d at 1578–79; *see also United States v. Jefferies*, 908 F.2d 1520, 1527 (11th Cir.1990) (holding that when plea agreement stipulates a particular fact, the government cannot later argue in contradiction of that fact); *United States v. Tobon–Hernandez*, 845 F.2d 277, 280 (11th Cir.1988) (same). In *Boatner*, the government had stipulated in the plea agreement that two ounces of cocaine would be the only quantity considered for sentencing purposes. Even so, "the government supported the information contained in the presentence investigation report by declaring to the court that its later investigations had revealed that the amount of cocaine involved was actually between two and three-quarters and three kilograms." 966 F.2d at 1579. We held that because the information concerning two to three kilograms of cocaine was specifically precluded by the plea agreement, the government had breached that agreement by supporting the information contained within the PSI. *Id.; see also United States v. Canada*, 960 F.2d 263, 268 (1st Cir.1992) (holding that government breached the plea agreement when, at the sentencing hearing, it "affirmatively supported a higher sentence than that upon which the parties had agreed"

and "failed to apprise the court of [the defendant's] cooperation").

Although we recognize that *Boatner* involved the breach of a factual stipulation contained within the agreement, whereas this case involves a breach of a promise to recommend a particular sentence, we think the reasoning of *Boatner* applies equally in this case. In both situations, the defendant reasonably relied upon a promise made by the government in the plea agreement, and in both situations the government advocated a position taken in the PSI that was incompatible with fulfillment of the promise.

Our holding in *United States v. Grandinetti*, 564 F.2d 723 (5th Cir.1977), also supports our conclusion that the government breached the plea agreement in this case. The attorney who represented the government at a probation revocation hearing in *Grandinetti* "acted as though he had never seen the [plea] agreement." *Id.* at 725. Upon reading the agreement, the government attorney commented to the court that he thought based upon the plea agreement that "the Government is locked-in to the language of that thing," even though he was "not too sure of the legality of it nor the propriety." *Id.* Based upon the government's conduct, we held that "the defendant did not receive the benefit of his bargain" because the government was "not only an unpersuasive advocate for the plea agreement, but, in effect, argued against it." *Id.* at 727.

Here, the government similarly failed to carry out its part of the plea agreement. In its statements responding to Taylor's objections to the PSI, the government advocated a position contrary to its agreed-upon recommendation. If anything, the government's breaching statements in this case are more egregious than those made in *Grandinetti*, because here the government affirmatively supported a position inconsistent with the plea agreement, whereas in *Grandinetti* it merely bad-mouthed the agreement. *Id.* at 725; *accord Canada*, 960 F.2d at 269 (stating that the government's "overall conduct must be reasonably consistent with making such a recommendation"). During oral argument, the government conceded that its support of the PSI's position on related conduct was "completely incompatible" with the terms of the plea agreement, but argued that any breach was cured when the government did recommend at the sentencing hearing a ten year sentence. We disagree. That recommendation, which merely paid "lip service" to the agreement, is insufficient to rectify the breach committed when the government advocated a position requiring a longer sentence than it had agreed to recommend. In *Canada*, the First Circuit held under almost identical facts that the "lip service" the government paid the agreement did not cure its breach. 960 F.2d at 269. Likewise, in *Grandinetti* the fact that the government ultimately and grudgingly made the recommendation it had agreed to make did not persuade us that the breach had been cured. Here, as in *Grandinetti* and *Canada*, the government's begrudging recommendation was too little, too late to undo the effect of its breach.

The government also suggests that the district court may not have considered the government's breaching statements when it determined Taylor's sentence in this case. We are not convinced that would matter. *See Santobello*, 404 U.S. at 262, 92 S.Ct. at 499 (remanding case even though Court had "no reason to doubt" the sentencing judge's statement that "the prosecutor's recommendation did not influence him"); *Tobon–Hernandez*, 845 F.2d at 280 (holding that "the district court's abstention from consideration of the contrary facts was insufficient" to rectify the breach). In any event, there is no indication that the court did not consider those breaching statements when it determined, to Taylor's detriment, that the PSI position on relevant conduct was correct. Presumably the government attorney who made those statements thought that they might influence the judge, or else there would have been no point in making them. Absent some reason in the record for second guessing that government attorney's evaluation of the possible effect of his advocacy, we are unwilling to conclude that it had no effect.

### B.

■ There are two remedies available in this situation. We can leave the guilty plea

intact and remand the case for resentencing before a different judge, or we can permit Taylor to withdraw the plea. *Rewis,* 969 F.2d at 988–89. Taylor prefers to withdraw his guilty plea, but the choice between remedies is within our discretion. *See, e.g., Jefferies,* 908 F.2d at 1527; *United States v. Nelson,* 837 F.2d 1519, 1525 (11th Cir.), *cert. denied,* 488 U.S. 829, 109 S.Ct. 82, 102 L.Ed.2d 58 (1988). Although "the remedy of withdrawal of the guilty plea has not been favored in this circuit," *Jefferies,* 908 F.2d at 1527, we do choose that remedy here. The government's breaching statements are contained within its response to the defendant's objections to the PSI. Even if we were to remand this case to a different district court judge, those breaching statements would still be a part of the record available to the judge on remand and to parole boards in the future.

In closing we note that, for better or worse, plea bargains have become an essential part of our criminal justice system. It is in the best interests of the government, as well as the system as a whole, that defendants be able to count on the government keeping the promises it makes in order to secure guilty pleas. Those broader interests, as well as each individual defendant's interest in receiving the benefit of his bargain, require that courts stand ready and willing to hold the government to its promises.

### III. CONCLUSION

We REVERSE Taylor's conviction, and REMAND this case to the district court with instructions that he be permitted to withdraw his guilty plea.