[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPT 26, 2006
THOMAS K. KAHN
CLERK

_____

No. 06-10609
Non-Argument Calendar

_____

D. C. Docket No. 05-00023-CR-FTM-33-SPC

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CALVIN BERNARD COCHRAN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(September 26, 2006)**

Before BIRCH, CARNES and PRYOR, Circuit Judges.

PER CURIAM:

Calvin Cochran appeals his sentence for possession of a firearm by a

convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(e).  Cochran argues

on appeal that the government breached the plea agreement in which it agreed not

to oppose a sentence for Cochran at the low end of the relevant guidelines range,

by advocating a position inconsistent with a low end sentence.  Specifically,

Cochran objects to the government's adding facts about his offense and calling the

district court's attention to them at his sentencing.  Cochran also contends that the

district court did not understand the mandatory requirements of U.S.S.G. §

5G1.3(b) (Nov. 2005) and should have phrased the judgment to deduct the time

Cochran had already served for his state sentence.  For the reasons discussed

below, we hold that the government did not breach the plea agreement and

therefore Cochran's argument concerning U.S.S.G. § 5G1.3(b) is waived by his

plea agreement sentence appeal waiver.  Accordingly, we AFFIRM.

## I. BACKGROUND

Cochran and the government entered into a plea agreement in which

Cochran agreed to plead  guilty to possession of a firearm by a convicted felon as

an armed career criminal in violation of 18 U.S.C. §§ 922(g)(1) and 924(e).  The

probation officer recommended an enhanced base offense level of 34 pursuant to

the armed career criminal provision of § 4B1.4(b)(3)(A).  The government agreed

to not oppose Cochran's request for a two-level reduction for acceptance of

2

responsibility. Further, the government agreed to make a motion pursuant to U.S.S.G. § 3E1.1(b) for a one-point downward adjustment, creating a final offense level of 31 with a criminal history category of VI. Cochran's guideline imprisonment range was 188-235 months. The government also represented that "[a]t the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will not oppose the defendant's request to the Court that the defendant receive a sentence at the low end of the applicable guideline range . . . ." R1-24 at 3-4. The agreement emphasized that the district court was not bound by these recommendations. The agreement also provided that:

> The United States reserves its right and obligation to report to the [district court] and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count to which the defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

Id. at 9. Additionally, the agreement stated that:

> [Cochran] agrees that [the district court] has jurisdiction and authority to impose any sentence up to

3

the statutory maximum and expressly waives the right to appeal [his] sentence or to challenge it collaterally on any ground, including the ground that the [district court] erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the [district court]</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; . . . .

<u>Id.</u> at 10-11. By entering into the agreement, Cochran acknowledged that he had numerous felony convictions and that:

> On August 19, 2004, . . . the Fort Myers Police Department received a complaint of a possible assault in progress . . . . The complainant provided Florida tag number X62719 and indicated it was attached to a silver vehicle involved in the assault. A registration check on the tag number . . . showed it registered to a 1990 Buick Regal listed as stolen.
> [A Fort Myers Police officer] arrived in the area minutes later and observed a gray Buick . . . [and] . . . a single black male occupant in the vehicle. The driver of the vehicle, later identified as Calvin Bernard Cochran, spotted [the officer] . . . and made a quick turn . . . [the officer] was able to catch up to the Buick . . . [and] confirmed the tag on the vehicle was X62719 . . . . Cochran ignored [the officer's] attempt to stop him and accelerated away from him and began a series of turns in an attempt to escape . . . Cochran continued . . . [until] he impacted with stop sticks . . . . The stop sticks . . . flattened the right front tire of the vehicle . . . [and] Cochran continued to attempt to flee and put the vehicle in reverse and spun it away from [the officer]. Cochran .

4

. . then fled from the vehicle on foot[,] . . . ran through the front entrance of [a house,] and shut the door behind him. [The officer] believed that Cochran had entered this home illegally and attempted to open the front door, but Cochran blocked his efforts temporarily. [The officer] was able to make entry through the front entrance causing Cochran to flee into a back bedroom where he locked the door. [The officer] bre[a]ched this door and ordered Cochran to the ground. Cochran continued to resist . . . and was forcibly taken to the ground . . . . [B]ackup officers secured the vehicle . . . [and] observe[d] a silver revolver sticking out from under the front center armrest of the vehicle . . . .

The . . . revolver was manufactured in Connecticut. The presence of this item in Florida proves Cochran possessed it in or affecting commerce. Cochran knowingly possessed the firearm at the time he was confronted and eventually apprehended . . . . According to the Florida Department of Clemency, there is no record of restoration of the civil right to possess a firearm for Cochran.

Id. at 12-16.

At his change-of-plea hearing, Cochran stated that he read and understood the plea agreement before signing it. Cochran understood that the court was not bound by the recommendations or facts contained in the agreement and that it could sentence him based on what the it believed to be correct. The magistrate judge reviewed the terms and consequences of the sentence appeal waiver in the plea agreement, and Cochran stated that he understood them. Cochran agreed with the facts contained in the plea agreement and pled guilty to the charge.

5

In the presentence investigation report (PSI) the probation officer also reported that Cochran was then serving a three-year, two-month Florida state sentence for fleeing, possession of cocaine and marijuana, and grand theft of an automobile, charges stemming from the same conduct as the instant offense. The PSI also stated that U.S.S.G. § 5G1.3 applied to the offense.

The government objected to the PSI, proposing to add additional facts that had no impact on the advisory guidelines. The government contended that paragraph six should include the statement of a witness, Geoff Griggs, who observed the silver vehicle Cochran was driving chasing a small white compact car. The driver of the silver vehicle shot at the white car three times. Griggs observed that the driver of the silver car had a nickel or chrome revolver. Griggs recorded the license tag number X62719 and provided it to police after calling 911. The government indicated that if Cochran objected to these facts, the government would object to an sentence adjustment for acceptance of responsibility. Cochran objected to the inclusion of the additional facts, stating that all pertinent facts were in the plea agreement.

At sentencing, the government noted that the original PSI fixed the adjusted offense level of 33 and that it wanted to add facts to the PSI that would raise Cochran's offense level to 34. The government reiterated the facts contained in its

objection to the PSI and argued that these acts constituted either aggravated assault or attempted second degree murder under Florida law. It urged the court to find that Cochran possessed a firearm in connection with a violent crime.

Cochran objected to the inclusion of those facts and protested that the government breached the plea agreement. Cochran agreed that he should have an adjusted criminal offense level of 34 with a three-level reduction for acceptance of responsibility. Cochran explained that he pled guilty in Florida state court to four charges stemming from the conduct of the instant offense and that those charges did not include aggravated assault or attempted second-degree murder. The factual basis contained in the plea agreement did not support charges of attempted second-degree murder and aggravated assault. Cochran posited that the government's attempt to insert additional facts that did not change the guidelines scoring in the PSI was inconsistent with its promise not to oppose a low-end guidelines sentence. Cochran asserted that the government furthered its breach by insisting that it would oppose a reduction in Cochran's sentence for acceptance of responsibility if he objected to these new facts.

The government responded that the plea agreement allowed the government to introduce these additional facts because it was only including all pertinent facts relating to the assault already mentioned in the PSI. The government explained

that it could not previously locate Griggs and that it was recently able to locate him and obtain a statement. The government did not realize that fleeing and eluding constituted a violent crime, so it included the assault witnessed by Griggs because it also constituted a violent crime. The government conceded that the original PSI only gave Cochran an offense level of 33, but Cochran agreed to use his state fleeing and eluding charge as a violent crime to reach an offense level of 34. The government argued that the additional facts constituted relevant conduct and that Cochran could lose acceptance of responsibility for objecting to them.

Cochran responded that the facts in the plea agreement already produced an offense level of 34 and were unnecessary. The district court sustained the government's objection to the facts contained in the PSI and allowed it to introduce the additional facts in the addendum. Cochran objected to the court's ruling.

When the court asked the prosecutor about an appropriate sentence for Cochran, the prosecutor stated he "st[oo]d by [his] concession in the plea agreement." R3 at 42-43. When asked to reaffirm the government's concession, the prosecutor specified that he had "[n]o objection to the low end of the guidelines," adding, "[a]nd I would just ask the Court to take into consideration all the facts as presently contained in the presentence report." Id. at 43. The court gave Cochran a 211-month sentence that was to be served concurrently with his

8

state prison sentence. The court opined that it did not find any mitigating or aggravating circumstances and that Cochran had an extensive criminal record, so a middle-of-the-guidelines range sentence was appropriate. Further, the sentencing judge reiterated that the government's low-end recommendation was non-binding and she did not think it was an appropriate sentence.

Cochran requested that the district court's judgment subtract the 16 months and 9 days that he had already served for his state convictions from the 211-month sentence pursuant to U.S.S.G. § 5G1.3(b). The government objected to Cochran's request because the district court had not determined that the Federal Bureau of Prisons ("BOP") was unable to credit the concurrent sentence properly, as required by § 5G1.3(b). The government further advised that Cochran's time served was not for a gun charge, but for fleeing and drug charges. Cochran responded that drafting the judgment in this way did not diminish Cochran's sentence and that his state sentence stemmed from the same criminal episode as the federal offense. The court found that the BOP could give Cochran the proper credit for his state sentence and refused to alter the judgment. Cochran objected to the court's ruling and stated that the BOP would not take his state sentence into account.

## II. DISCUSSION

Generally, the issue of whether the government breached a plea agreement is

a question of law reviewed de novo. United States v. Mahique, 150 F.3d 1330, 1332 (11th Cir. 1998) (per curiam). A material promise by the government, which induces the defendant to plead guilty, binds the government to that promise. Santobello v. New York, 404 U.S. 257, 262, 92 S.Ct. 495, 499 (1971). Whether the court considered or was influenced by the government's position on the sentencing issue is not relevant. See United States v. Johnson, 132 F.3d 628, 630 (11th Cir. 1998) (per curiam).

For the government to "unequivocally promise[]" that it would make a particular sentencing recommendation, and then advocate a position incompatible with the fulfillment of that promise is a clear breach of a plea agreement. United States v. Taylor, 77 F.3d 368, 370-371 (11th Cir. 1996). A recommendation by the government that merely provides "lip service" to the plea agreement does not rectify the breach. Id. at 371 (citations omitted). The solemnization of a plea agreement, however, does not preclude the government from disclosing pertinent information to the sentencing court. United States v. Boatner, 966 F.2d 1575, 1578 (11th Cir. 1992) (citations omitted).

Whether the government violated the agreement is judged according to the defendant's reasonable understanding of the agreement at the time he entered the plea. United States v. Rewis, 969 F.2d 985, 988 (11th Cir. 1992). If the

government disputes the defendant's understanding, however, we determine the terms of the agreement according to objective standards. Id. When a breach of an agreement by the government has been established, we may either order specific performance of the agreement, by means of resentencing before a different judge, or allow withdrawal of the plea. Santobello, 404 U.S. at 262-63, 92 S.Ct. at 499.

In this case, the government did not breach the plea agreement. Cochran reasonably understood the agreement to require the government not to oppose a sentence at the low end of the guidelines range, and not to take a position contrary to that requirement. Similar to the plea agreement in United States v. Levy, Cochran's plea agreement did not bind the government to refrain from providing only certain factual information. See 374 F.3d 1023, 1030 (11th Cir. 2004) (per curiam), vacated on other grounds, Levy v. United States, 543 U.S. ___, 125 S.Ct. 2542 (2005).

Nothing prevented the parties from entering into a binding agreement that restricted the facts upon which the substantive offense was based. See Boatner, 966 F.2d at 1578 (citing United States v. Nelson, 837 F.2d 1519, 1522-1525 (11th Cir. 1988)). The plea agreement here, however, stated that the government "reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and

11

conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count to which the defendant pleads . . . ." R1-24 at 9. As a result, Cochran should have understood the government's right to report facts about his offense. Therefore, the government did not breach the plea agreement by introducing the facts disclosed by its witness, Griggs, because the plea agreement gave the government the right to report relevant factual information, including the totality of Cochran's criminal activities. See United States v. Carrazana, 921 F.2d 1557, 1569 (11th Cir. 1991).

The government also did not breach the plea agreement when the court asked it to recommend a sentence. The government responded that it did not oppose a sentence at the low-end of the advisory guidelines range, but asked the court to consider all of the facts contained in the PSI. The government did not explicitly advocate that the court sentence Cochran above the low end of the guideline range, and the government did not openly oppose the promises made in the plea agreement.

Taylor, Rewis, and Johnson are distinguishable from this case. In both Taylor and Rewis, the government affirmatively advocated positions that contradicted its express obligations under the plea agreements. In Rewis, the agreement limited the government's right of allocation of facts relevant to the

12

current offenses and foreclosed the government from suggesting any sentence. 969 F.2d at 988. The government there, however, stepped outside those bounds by emphasizing evidence not related to the offenses and made statements, although not specific, that suggested a harsh sentence. Id. In Johnson, the prosecutor "became an enthusiastic advocate for a 'fact' at odds with the 'fact' to which he had stipulated." 132 F.3d at 631.

Here, the government never explicitly advocated "a position requiring a greater sentence " than the "low end" of the advisory guidelines. See Taylor, 77 F.3d at 370. Furthermore, the factual information the government presented was not specifically precluded by the plea agreement, did not contradict stipulated facts, and was relevant to the totality of Cochran's criminal activities. See Boatner, 966 F.2d at 1579 (government violated plea agreement by endorsing information that was specifically precluded by the plea agreement). Cochran fails to cite a promise in his plea agreement that was breached when the government added these particular facts about his offense and called the court's attention to them at his sentencing.

Cochran also argues that the court did not understand the mandatory requirements of U.S.S.G. § 5G1.3(b) and should have fashioned the judgment to deduct the time Cochran had already served for his state sentence. Cochran claims

13

that this argument is not a guidelines issue; rather, the district court erred in drafting the judgment. In response, the government argues that Cochran waived this challenge in his plea agreement.

We review the validity of an appeal waiver provision of a plea agreement de novo. United States v. Weaver, 275 F.3d 1320, 1333 n. 21 (11th Cir. 2001). An appeal waiver is valid if it was entered into knowingly and voluntarily. United States v. Bushert, 997 F.2d 1343, 1350 (11th Cir. 1993). For an appeal wavier to be enforced, the government must show that either: (1) the court specifically questioned the defendant concerning the sentence appeal waiver during the plea hearing, or (2) it is manifestly clear from the record that the defendant otherwise understood the full significance of the waiver. Id. at 1351. "A waiver of the right to appeal includes a waiver of the right to appeal difficult or debatable legal issues-indeed, it includes a waiver of the right to appeal blatant error." United States v. Howle, 166 F.3d 1166, 1169 (11th Cir. 1999).

The sentence appeal waiver in Cochran's plea agreement precludes us from considering this issue. Cochran challenges his sentence on the ground that the court did not properly adjust it for time he had served on his state conviction as required by U.S.S.G. § 5G1.3(b). Cochran waived all challenges to his sentence except for challenges that the sentence (1) exceeded the applicable guidelines

14

range; (2) exceeded the maximum statutory penalty; (3) or violated the Eighth Amendment of the Constitution. The court questioned Cochran about the waiver in his plea agreement and Cochran stated that he understood it. Cochran's sentence was within the guidelines range and therefore did not exceed the statutory maximum. Also, Cochran does not challenge his sentence on Eighth Amendment grounds. Cochran's argument that he is only challenging the court's judgment is meritless. His appeal directly challenges the court's application of sentencing guidelines provisions as to the length of his federal sentence, and is therefore a challenge to his sentence. Accordingly, Cochran waived his argument concerning the court's application of U.S.S.G. § 5G1.3(b).

We conclude the government did not breach the plea agreement, and the sentence appeal waiver in plea agreement precludes us from considering the application of U.S.S.G. § 5G1.3(b). Accordingly, we **AFFIRM.**