[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-15109
Non-Argument Calendar
_____

D.C. Docket No. 2:12-cr-14035-KMM-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANDREW J. HALLOCK,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(August 14, 2013)

Before CARNES, Chief Judge, BARKETT and PRYOR, Circuit Judges.

PER CURIAM:

Andrew Hallock appeals his sentence of 240 months of imprisonment,

imposed after he pleaded guilty to receiving child pornography.  See 18 U.S.C.

§ 2252(a)(4)(B), (b)(2).  Hallock argues that the United States twice breached its plea agreement.  Although the United States did not breach the plea agreement by disclosing information about Hallock that supported a five-level enhancement of his sentence for engaging in a pattern of activity involving the sexual abuse or exploitation of a minor, see United States Sentencing Guidelines Manual § 2G2.2(b)(5) (Nov. 2011), the United States did violate its agreement to recommend a three-level reduction for Hallock's acceptance of responsibility, id. § 3E1.1.  Because Hallock is entitled to the specific enforcement of his plea agreement, see United States v. Johnson, 132 F.3d 628, 631 (11th Cir. 1998), we vacate Hallock's sentence and remand for Hallock to be resentenced before a different judge.

## I. BACKGROUND

Hallock was indicted for enticing a minor to engage in sexual activity, 18 U.S.C. § 2422(b), and possessing child pornography, id. § 2252(a)(4)(B), (b)(2). The United States later dismissed Hallock's indictment and charged him by superseding information for receiving child pornography.  Id. § 2252(a)(2), (b)(1).

Hallock entered an agreement to plead guilty to receiving child pornography. The written agreement provided that Hallock faced a mandatory minimum sentence of 5 years of imprisonment and that the district court "[had] the authority to impose any sentence within and up to the statutory maximum sentence" of 20

2

years.  In the agreement, the United States reserved the right to inform the district court and the probation office of "all facts pertinent to the sentencing process, including all relevant information concerning the offense committed, whether charged or not, as well as concerning [Hallock] and [his] background."  The United States agreed to recommend that Hallock receive a two-level reduction for acceptance of responsibility, U.S.S.G. § 3E1.1(a), and an additional one-level reduction if his offense level exceeded 16, see id. § 3E1.1(b), "despite the applicability of . . . [a two-level enhancement for] obstruction of justice," id. § 3C1.1.  The agreement provided that the United States was not required to recommend the reduction if Hallock "fail[ed] or refus[ed] to make a full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct"; made a misrepresentation to the United States before entering the plea agreement; or "commit[ted] any misconduct after entering into [the] plea agreement, including but not limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any government entity or official."  The United States and Hallock agreed to jointly recommend that he receive a sentence within the advisory guideline range as determined by increasing his base offense level by two points for images involving prepubescent minors or minors under the age of 12, id. § 2G2.2(b)(2); two points for distributing the images, id. § 2G2.2(b)(3)(F); four

3

points for images depicting sadistic or masochistic conduct, id. § 2G2.2(b)(4); two points for using a computer to possess and receive the images, id. § 2G2.2(b)(6); five points for receiving more than 600 images, id. § 2G2.2(b)(7)(D); and two points for his obstruction of justice, id. § 3C1.1.  The United States and Hallock also agreed to "jointly recommend that the [District] Court neither depart upward nor depart downward under the Sentencing Guidelines when determining the advisory guideline range . . . ."

The parties submitted a factual proffer that described the events leading to Hallock's arrest and the discovery of child pornography.  The proffer stated that detectives from the Police Department in Sebastian, Florida, responded to a report about an explosion at Hallock's residence; found Hallock's mother injured in a shed behind her residence; arrested Hallock for making a destructive device; and obtained a warrant to search Hallock's laptop computer for evidence relating to explosive devices.  A forensic examiner searched Hallock's computer for the word "bomb" and noticed that word in more than 500 files, including five files with names suggesting they contained child pornography.  Federal agents also obtained a warrant to search Hallock's computer and discovered 228 video recordings of child pornography, many of which involved prepubescent minors engaged in sexually explicit conduct, and a peer-to-peer file-sharing application that Hallock had used to download excerpts from 25 other videos of child pornography.  Agents

4

also discovered five additional files of child pornography on Hallock's USB flash drive.

At a change of plea hearing before a magistrate judge, Hallock stated that he had read and understood all the terms of his plea agreement and that he knew that the district court could decline to accept the terms of the plea agreement. Hallock also stated that he understood the United States would inform the district court and the probation office about the conduct underlying the charges in his former indictment:

> THE COURT: . . . Now paragraph 5 of the plea agreement says that, "The prosecutor reserves the right to inform the court and the Probation Office of all facts pertinent to the sentencing process, including all information concerning the offense committed, whether charged or not."
>
> Now, you have a superseding information. So you know that some charges were existing in the original indictment, and now we have gone to this superseding information, and so the charges in the indictment have gone away, but do you know that the prosecutor can still tell probation and the court all of the details of whatever took place in those other charges?
>
> HALLOCK: Yes.
>
> THE COURT: Very well. They can also give all of the information they have concerning you and your background.

Hallock also said he understood that the United States could be relieved of its obligation to recommend a reduction for acceptance of responsibility if he failed to satisfy the three conditions in his plea agreement; the recommendations with regard to sentencing enhancements and the estimate of his advisory guideline range

were not binding on the district court; and the agreement "contained . . . everything . . . in [his] deal with the government." The magistrate judge recommended that the district court accept Hallock's plea of guilty.

Hallock's presentence investigation report described the child pornography discovered on his computer and some chat logs and other data establishing that Hallock, who was 27 years old, abused F.K., a 16-year-old girl in Texas. In the chat logs, agents found messages from Hallock to F.K. that were sexually explicit. Agents also found messages that Hallock and F.K. exchanged while using their web cameras. During some of the webcam sessions, Hallock recorded "snapshot" images of F.K. wearing underwear and apparently masturbating. Messages exchanged during the webcam sessions revealed that Hallock had convinced F.K. to unclothe for him; Hallock had exposed himself to F.K.; and Hallock and F.K. had watched each other engage in sexual activities. Other data recovered from Hallock's computer and his cellular telephone established that he had visited F.K. in Texas; they had sexual contact during the visit; and Hallock was planning a future visit to have sex with F.K. Agents obtained from Hallock's mother, with whom he resided, letters from F.K. and her mother and undergarments that F.K. had mailed to Hallock. Agents also discovered in Hallock's residence several notebooks that contained entries about bomb-making; an outline of his method to entice young girls online; and the names of approximately 50 girls who attended a

6

middle school near his home.  The report also stated that Hallock mailed letters from jail to F.K.

The presentence report also described how Hallock directed his mother to conceal and destroy evidence.  While in jail, Hallock called his mother and asked her to safeguard a CD titled "ME," which she later gave to Hallock's father.  Agents obtained the CD and discovered that it contained recordings of chat sessions between Hallock and what seemed to be a 14-year-old girl.  Hallock also requested that his mother destroy six "bad" CDs that he had hidden among his baseball cards, and agents never recovered those CDs.

The report assigned Hallock a base offense level of 22, see U.S.S.G. § 2G2.2(a)(2), and increased that level by 17 points for the six enhancements to which he had agreed in his plea agreement, see id. §§ 2G2.2(b)(2), (b)(3)(F), (b)(4), (b)(6), (b)(7)(D); 3C1.1.  The report stated that Hallock had provided a statement that ordinarily would support a reduction for acceptance of responsibility, but the report did not recommend the reduction because Hallock had obstructed justice by destroying evidence.  See § 3E1.1 cmt. n.4.  The report increased Hallock's offense level by five points for engaging in a pattern of activity involving the sexual abuse or exploitation of a minor.  See id. § 2G2.2(b)(5).  Hallock had a total offense level of 44, but the Sentencing Guidelines capped the offense level at 43, see id., ch.5, pt. A. n.2.  With an offense

level of 43 and a criminal history of I, the report provided an advisory sentence of life imprisonment, but the report revised the advisory guideline sentence to Hallock's maximum statutory sentence of 20 years of imprisonment, see id. § 5G1.1(a).

Hallock objected to the presentence report on three grounds. First, Hallock moved to strike from the report the facts about his relationship with F.K. Second, Hallock objected to the five-level enhancement of his sentence for the pattern of sexual activity involving F.K. Third, Hallock requested a three-level reduction for acceptance of responsibility.

The United States responded that Hallock was not entitled to a reduction for acceptance of responsibility and he should not have his sentence enhanced for engaging in a pattern of sexual misconduct. The prosecutor argued that Hallock was not entitled to a three-point reduction for acceptance of responsibility because he had falsely denied abusing F.K. The prosecutor argued that the information about Hallock's "unlawful relationship and communication with F.K., as well as the disturbing musings in his notebooks . . . [about] entic[ing] young girls online, and listing the names and ages of girls in local middle schools, was directly relevant to the [District] Court's understanding of [Hallock's] characteristics and history . . ., circumstances of the offense, danger to the community, need for rehabilitation, etcetera," see 18 U.S.C. § 3553(a), and the prosecutor offered to

8

prove that relevant conduct during Hallock's sentencing hearing. The prosecutor refused to recommend an enhancement of Hallock's sentence for engaging in a pattern of sexual activity involving a minor. The prosecutor explained he had entered an "implicit agreement" with Hallock that the United States would not recommend the pattern enhancement. During plea negotiations, the prosecutor told Hallock that the enhancement "did not appear to apply" because "the facts showed one continual attempt by [Hallock] during a five month period . . . to entice F.K. to engage in sexual acts, not necessarily separate instances of abuse as required by the pattern enhancement."

At the sentencing hearing, the district court overruled Hallock's objections to the presentence report. The district court offered to allow Hallock to withdraw his plea of guilty, but Hallock declined the offer and requested specific enforcement of the plea agreement. The district court denied Hallock's request to strike the information about F.K. on the grounds that those facts were accurate and relevant to fashioning an appropriate sentence, see 18 U.S.C. §§ 3553, 3661; U.S.S.G. § 1B1.4, and overruled Hallock's objection to the five-point enhancement for a pattern of sexual activity. The district court also denied Hallock's request for a reduction for acceptance of responsibility and explained that the decision was based on Hallock's obstruction of justice, not because he had falsely denied relevant conduct. The district court remarked that its decision to deny the

9

reduction for acceptance of responsibility was inconsequential because a three-point reduction would not have changed Hallock's advisory guidelines sentence.

## II. STANDARD OF REVIEW

We review de novo whether the United States breached its plea agreement. United States v. Horsfall, 552 F.3d 1275, 1281 (11th Cir. 2008). "The government is bound by any material promises it makes to a defendant as part of a plea agreement that induces the defendant to plead guilty." United States v. Taylor, 77 F.3d 368, 370 (11th Cir. 1996). We evaluate "whether the government violated the agreement . . . according to the defendant's reasonable understanding at the time he entered his plea." Id. (internal quotation marks and citation omitted).

## III. DISCUSSION

Hallock and the United States dispute whether it breached the plea agreement. Hallock argues that the United States agreed not to request an enhancement for engaging in a pattern of sexual activity with a minor and violated that agreement by offering to introduce evidence to prove Hallock's abuse of F.K., submitting letters to the district court written by F.K. and her father, and failing to oppose the enhancement during the sentencing hearing. Hallock also argues that the United States violated its agreement to recommend that Hallock receive a three-point reduction for acceptance of responsibility. The government argues that it did not breach its plea agreement and, even if it did so by failing to recommend a

10

reduction for acceptance of responsibility, that error was harmless. We address these arguments in turn.

*A. The United States Did Not Breach the Plea Agreement by Disclosing Relevant Information About Hallock or Failing to Oppose Vigorously the Related Five-Point Enhancement for Engaging in a Pattern of Sexual Activity With a Minor.*

The plea agreement allowed the United States to disclose factual information about Hallock's sexual activity with F.K. and victim impact statements from her and her father. The United States "does not breach a plea agreement where the agreement authorizes [it] to provide certain factual information, and the government does not expressly violate another one of its obligations." Horsfall, 552 F.3d at 1283; see also United States v. Boatner, 966 F.2d 1575, 1578 (11th Cir. 1992) ("The solemnization of a plea agreement does not preclude the government from disclosing pertinent information to the sentencing court."). In the plea agreement, the United States expressly reserved the right to inform the district court and the probation office about "all relevant conduct concerning the offense committed, whether charged or not, as well as concerning [Hallock] and [his] background." That provision permitted the United States to disclose information about Hallock's abuse of F.K. and to introduce victim impact evidence that was relevant to his history and characteristics and aided the district court in fashioning a sentence that achieved the statutory purposes of sentencing. See 18 U.S.C. §§ 3553(a), 3771(c)(1); Horsfall, 552 F.3d at 1282–83. Hallock contends that he

11

"would not have reasonably understood the phrase 'relevant <u>offense</u> conduct' . . . to [include the] uncharged conduct" involving F.K., but the magistrate judge specifically explained to Hallock during the guilty plea colloquy that the United States could disclose factual information about Hallock's abuse of F.K. despite the dismissal of the charges related to that abuse.

The United States did not violate its agreement not to recommend a five-point enhancement for engaging in a pattern of sexual activity with a minor. The prosecutor abided by its "implicit agreement" with Hallock by not recommending the enhancement in its written response to Hallock's objections or at Hallock's sentencing hearing. And the United States was not obliged to oppose the enhancement. The United States is not required to express "enthusiasm" for the terms of a plea agreement unless that is specified in the agreement, <u>United States v. Benchimol</u>, 471 U.S. 453, 455–57, 105 S. Ct. 2103, 2104–05 (1985), and Hallock provides no evidence that the United States promised to do more than it did. The "implicit agreement" required that the United States not recommend the enhancement, and it complied with that agreement.

Hallock argues that our decisions in <u>Boatner</u> and <u>Taylor</u> support his argument that the United States violated its agreement by disclosing relevant information about Hallock, but we disagree. In <u>Boatner</u>, we held that the United States breached its plea agreement by endorsing evidence in the presentence report

that Boatner had been involved with almost three kilograms of cocaine, after stipulating in the plea agreement that he would be sentenced only for distributing two ounces of cocaine. 966 F.2d at 1578–79. Similarly, in Taylor, we held that United States breached its promise to recommend a sentence of 10 years of imprisonment when it later offered to introduce evidence that would subject Taylor to a sentence of more than 10 years. 77 F.3d at 369–71. In contrast with Boatner and Taylor, the United States did not advocate a position contrary to its obligations to Hallock. The United States agreed not to recommend an enhancement for a pattern of sexual activity, and it complied with that agreement. Nothing in that agreement limited the amount or type of information that the United States could disclose about Hallock for purposes of sentencing. And the United States was entitled under the plea agreement to "inform the [District] Court and the probation office of all facts pertinent to the sentencing process." See United States v. Thomas, 487 F.3d 1358, 1360–61 (11th Cir. 2007) (holding that an argument for the district court to give "serious consideration of the imposition of consecutive penalties" did not violate a plea agreement that forbade the government from recommending a specific sentence, but allowed it to give advice about sentencing considerations). The United States abided by its agreement.

13

*B. The United States Violated Its Agreement to Recommend a Reduction for Acceptance of Responsibility, And Hallock is Entitled to Specific Performance of that Agreement.*

The United States breached the plea agreement by refusing to recommend that Hallock receive a reduction for acceptance of responsibility. "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Santobello v. New York, 404 U.S. 257, 262, 92 S. Ct. 495, 499 (1971). According to the plea agreement, the United States was obliged to recommend that Hallock receive a reduction for acceptance of responsibility unless he failed to disclose to the probation office the "circumstances surrounding the relevant offense conduct"; made a misrepresentation to the United States before entering the plea agreement; or "commit[ted] any misconduct after entering [the] plea agreement," like "making false statements or misrepresentations" to a government official. The United States argues that it was not obliged to recommend the reduction because Hallock filed an objection to his presentence report that "den[ied] the truth of relevant conduct" about his relationship with F.K., but the plea agreement did not prohibit Hallock from objecting to his presentence report. The United States argues that Hallock's objection was inconsistent with his responsibility to disclose relevant conduct to the probation office, but the United States did not argue to the district court, nor does the United States cite any

14

evidence in the record, that Hallock withheld information from the probation office. Because the United States fails to make any argument suggesting that Hallock violated a condition prerequisite to obtaining a reduction for acceptance of responsibility, we conclude that the United States violated its agreement to recommend that reduction.

The United States argues that its violation of the plea agreement is harmless because the district court had an independent basis for denying Hallock the reduction, but it is irrelevant whether the breach by the United States affected the decision of the district court. To determine whether a plea agreement has been breached, "we do not address the district court's exercise of discretion in imposing a sentence. Rather, we focus on the government's violation of its plea agreement." United States v. Johnson, 132 F.3d 628, 630 (11th Cir. 1998) (internal quotation marks, citation, and emphasis omitted). When the United States breaches its contractual obligations to a defendant, "the sentencing judge's acts are not important to [that] issue." Id.

Hallock is entitled to specific performance of the plea agreement. "Since [Hallock] does not desire to withdraw his guilty plea, and since his request for specific performance is justified by his adherence to his side of the bargain, we will honor his request." See United States v. Rewis, 969 F.2d 985, 989 (11th Cir.

15

1992); see also Johnson, 132 F.3d at 631.  We vacate Hallock's sentence and remand for a new sentencing hearing before a different judge.

## IV. CONCLUSION

We **VACATE** Hallock's sentence, and we **REMAND** for Hallock to be resentenced before a different judge.