[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-14072
Non-Argument Calendar

_____

D.C. Docket No. 1:18-cr-20942-RKA-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

ALIET HUSSEIN,
a.k.a. Aliet Pino Garcia,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(November 10, 2020)

Before MARTIN, ROSENBAUM, and LAGOA, Circuit Judges.

PER CURIAM:

Aliet Hussein ("Hussein") appeals the denial of her motion for specific performance of her plea agreement.  Hussein argues that the government breached the plea agreement by advocating for a three-level aggravating role enhancement and opposing her motion for a downward variance.  For the following reasons, we affirm.

## I.    FACTUAL AND PROCEDURAL HISTORY

From about February 2015 to December 2018, Hussein owned and operated Sky Pharmacy.  Through Sky Pharmacy, Hussein engaged in a scheme in which she submitted, or caused the submission of, false Medicare Part D claims for prescriptions that were never filled.  On December 6, 2018, the government charged Hussein with twelve counts of health care fraud in violation of 18 U.S.C. § 1347.

On July 24, 2019, Hussein entered into a plea agreement with the government.  Hussein agreed to plead guilty to Count 1 of the indictment, and the government agreed to dismiss the remaining counts after sentencing.  Paragraph 7 of the plea agreement stated as follows:

> This Office and the defendant agree that, although not binding on the probation office or the Court, they will jointly recommend that the Court make the following findings and conclusions as to the sentence to be imposed:
>
> a.    Base Offense Level: the parties agree that the base offense level applicable to the defendant's conduct is level six (6) pursuant to Sentencing Guidelines §2B1.1(a)(2).

2

b.    Intended Loss: the parties agree that the defendant's participation in the offense caused an intended loss to Medicare exceeding $1.5 million but not exceeding $3.5 million, resulting in a sixteen (16) level enhancement pursuant to Sentencing Guidelines §2B1.1(b)(1)(I).

c.    Federal Health Care Program:  the parties agree that the defendant's offense of conviction is a Federal health care offense involving a Government health care program, and the loss to the Government health care program exceeds $1 million but does not exceed $7 million, resulting in a two (2) level enhancement under Sentencing Guidelines §2B1.1(b)(7).

Then Defendant remains free to advocate for or against any other sentencing adjustments under the guidelines, and to argue for sentencing variances under 18 U.S.C. § 3553(a).

 (emphasis in original).  The government further agreed to recommend, under certain conditions, a two-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a), an additional one-level reduction pursuant to U.S.S.G. § 3E1.1(b) if the offense level at the time of sentencing was sixteen or greater, and "that the Defendant receive a sentence at the low-end of the sentencing guidelines, as those guidelines are calculated by Probation."

In Paragraph 5 of the plea agreement, the government reserved its rights as follows:

This Office reserves the right to inform the Court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning the defendant and the defendant's background.  Subject only to the express terms of any agreed-upon sentencing recommendations contained in this agreement,

3

this Office further reserves the right to make any recommendation as to the quality and quantity of punishment.

The plea agreement included a warning that:

[A]ny estimate of the probable sentencing range or sentence that the defendant may receive, whether that estimate comes from the defendant's attorney, this Office, or the probation office is a prediction, not a promise, and is not binding on this Office, the probation office or the Court. The defendant understands further that any recommendation that this Office makes to the Court as to sentencing, whether pursuant to this agreement or otherwise, is not binding on the Court and the Court may disregard the recommendation in its entirety.

Finally, the plea agreement included an integration clause, stating: "This is the entire agreement and understanding between this Office and the defendant. There are no other agreements, promises, representations, or understandings."

The Presentence Investigation Report ("PSI") mostly accorded with the plea agreement. Applying the 2018 Sentencing Guidelines, the PSI set the base offense level at six. *See* U.S.S.G. § 2B1.1(a)(2). The PSI also recommended a sixteen-level enhancement because the loss amount was between $1.5 million and $3.5 million and a two-level enhancement because the conviction involved a loss of greater than $1 million to a federal health care program. *See id.* § 2B1.1(b)(1)(I), (b)(7)(A). The PSI further recommended a three-level reduction for acceptance of responsibility. *See id.* § 3E1.1(a)–(b). The PSI departed from the plea agreement, however, in recommending a three-level enhancement because "the defendant was a manager or supervisor (but not an organizer or leader) of a criminal activity that was otherwise

4

extensive." *See id.* § 3B1.1(b).  The PSI calculated a total offense level of twenty-four.  With a criminal history category of I, the recommended guideline range was fifty-one to sixty-three months of imprisonment.  *See* U.S.S.G. Sentencing Table, ch. 5, pt. A.  Had the PSI not applied the three-level role enhancement, the total offense level would have been twenty-one and the guideline range would have been thirty-seven to forty-six months' imprisonment.  *See id.*  The statutory maximum sentence was ten years.  *See* 18 U.S.C. § 1347(a).

Hussein filed objections to the PSI, specifically objecting to the three-level role enhancement.  She also moved for a downward variance pursuant to 18 U.S.C. § 3553.  The government responded that the role enhancement was appropriate and opposed a downward variance.  Hussein then moved for specific performance, arguing that the government had violated the plea agreement by advocating for the role enhancement and opposing a downward variance.  Hussein argued that, because Paragraph 7 of the plea agreement specified that the defendant was free to advocate for or against additional sentencing adjustments, it unambiguously precluded the government from advocating for sentencing enhancements beyond those agreed to as part of the plea.  She also attached email correspondence between herself and the government stating that "[i]f the Defendant goes to trial, we will seek enhancements for role."  Finally, Hussein argued that the plea agreement's statement that she was

5

free to argue for a downward variance created the "'reasonable understanding' that the Government would not oppose her motion for a variance."

The district court conducted a sentencing hearing on October 4, 2019. Looking specifically at Paragraph 5 and Paragraph 7, the district court found "that the most reasonable reading of the plea agreement is that the plea agreement is unambiguous in allowing either the government or probation, or both, to seek enhancements, allowing [Hussein] to seek reductions, and, of course, allowing [Hussein] to oppose those enhancements, if they are advocating for those enhancements." The district court, therefore, concluded that the government did not breach the plea agreement by advocating for a role enhancement and opposing a downward variance.

Next, the district court addressed the merits of the three-level role enhancement. The court sustained in part and overruled in part Hussein's objection, finding that she was an organizer, leader, manager, or supervisor of criminal activity, but that the government had not met its burden to prove that the criminal activity was "otherwise extensive." The court therefore imposed a two-level enhancement pursuant to U.S.S.G. § 3B1.1(c), rather than the three-level enhancement recommended in the PSI. This resulted in an offense level of 23 and a guideline range of forty-six to fifty-seven months of imprisonment. *See* U.S.S.G. Sentencing Table, ch. 5, pt. A. Pursuant to the plea agreement, the government advocated for a

6

sentence of forty-six months, the low end of the range. The government also reiterated its opposition to a downward variance. Hussein argued in favor of a downward variance, requesting house arrest. She called two witnesses in support of her argument and testified on her own behalf. The court denied the downward variance and sentenced Hussein to forty-six months of imprisonment, as well as restitution of $1,884,867.09, three years of supervised release, and a $100 special assessment. This appeal ensued.

## II.    STANDARD OF REVIEW

"We review *de novo* whether the government breached a plea agreement." *United States v. Thomas*, 487 F.3d 1358, 1360 (11th Cir. 2007).

## III.    ANALYSIS

"[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262 (1971). Plea agreements are typically interpreted using contract interpretation tools. *United States v. Jeffries*, 908 F.2d 1520, 1523 (11th Cir. 1990). In determining whether the government breached a plea agreement, we must first ascertain the scope of the government's promises. *United States v. Copeland*, 381 F.3d 1101, 1105 (11th Cir. 2004). "The district court's factual findings on the scope of the agreement will be set aside only if they are clearly erroneous." *Id.*

7

Hussein contends that the plea agreement prohibited the government from advocating for a role enhancement or opposing a downward variance. In Paragraph 5 of the plea agreement, the government plainly reserved its rights to "inform the Court and the probation office of all facts pertinent to the sentencing process" and to "make any recommendation as to the quality and quantity of punishment." The government did just that when it advocated for a role enhancement and opposed a downward variance. This reservation of rights was "[s]ubject only to the express terms of any agreed-upon sentencing recommendations contained in th[e] agreement." Hussein argues that this language means that the government was not authorized to make recommendations beyond those expressly agreed to in the plea. But a plain reading of this language indicates that the government could not *contradict* the express terms of the plea. On matters where the plea agreement was silent, including a role enhancement and downward variance, the government was free to "make any recommendation as to the quality and quantity of punishment." *Cf. Raulerson*, 901 F.2d at 1012 ("Raulerson failed to negotiate for or failed to obtain the government's silence at his sentencing hearings; thus, we hold that the government did not breach its agreement regarding standing mute.").

Hussein argues that Paragraph 5 conflicts with Paragraph 7 and that because Paragraph 7 is more specific, it should control. *See United States v. Pielago*, 135 F.3d 703, 710 (11th Cir. 1998) ("When two contract terms conflict, the specific term

8

controls over the general one."). Hussein further argues that because Paragraph 7 gave her, and not the government, the right to advocate for sentencing adjustments and variances, the government's right to advocate beyond the terms of the agreement was limited through omission. We conclude, however, that the two paragraphs are not in conflict but rather, they complement each other. Paragraph 7 lays out specific terms of the plea agreement and reserves Hussein's rights, while Paragraph 5 reserves the government's rights. Reading both paragraphs together, it is clear that the government and Hussein were jointly bound to make the recommendations listed in Paragraph 7, Hussein was "free to advocate for . . . any other sentencing adjustments," and the government reserved its rights to "make any recommendation as to the quality and quantity of punishment," which Hussein was "free to advocate . . . against." Likewise, although Paragraph 7 made clear that Hussein was "free . . . to argue for sentencing variances under 18 U.S.C. § 3553(a)," the plea agreement neither made a promise nor contained any language precluding the government from opposing the request for a sentence variance.

We find this Court's decisions in *United States v. Boatner*, 966 F.2d 1575 (11th Cir. 1992), and *United States v. Taylor*, 77 F.3d 368 (11th Cir. 1996), instructive regarding the type of inconsistent statements at sentencing that could constitute a breach of the plea agreement by the government. In *Boatner*, the government "provid[ed] information to the court in the presentence investigation

9

report which contradicted a factual stipulation with the defendant." 966 F.2d at 1576. In *Taylor*, the government "promise[d] to recommend a ten-year sentence" but then "[a]dvoca[ted] [for] a position requiring a greater sentence." 77 F.3d at 370.

Here, in contrast, there was no contrary statement of fact, nor did the plea agreement promise that the government would recommend a particular sentence. Rather, in the plea agreement, the government promised that it would make five discrete recommendations: (1) a base offense level of six; (2) a sixteen-level loss amount enhancement; (3) a two-level federal health care offense enhancement; (4) a three-level acceptance of responsibility reduction, subject to certain conditions; and (5) a sentence on the low end of the guideline range. The record shows that the government made each of the five promised recommendations.

## IV.    CONCLUSION

Because we find that the terms of the plea agreement were unambiguous, and that the government did not breach those terms, we affirm the district court's denial of Hussein's motion for specific performance.

**AFFIRMED.**