[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-11825
Non-Argument Calendar
_____

D.C. Docket No. 9:18-cr-80166-DMM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

NICHOLAS WUKOSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(January 10, 2020)

Before GRANT, TJOFLAT and FAY, Circuit Judges.

PER CURIAM:

Nicholas Wukoson appeals his 96-month total prison sentence for 6 counts of possession of child pornography involving a prepubescent minor and 1 count of witness tampering.  We affirm.

## I. BACKGROUND

In 2017, a Federal Bureau of Investigation ("FBI") agent discovered and downloaded multiple images and videos depicting the sexual abuse of prepubescent children, under age twelve, from a computer using a torrent program to upload files to other users.  An administrative subpoena confirmed that the suspect computer was at an internet address corresponding to Wukoson's home address.  The FBI executed a search warrant at Wukoson's house and recovered two laptop computers that Wukoson admitted belonged to him.  After examining the laptops, the FBI uncovered several videos and images of confirmed child pornography and evidence of hundreds more videos and images of suspected child pornography.  Wukoson admitted that he was responsible for downloading the child pornography on the two laptops; however, after the search warrant was executed, Wukoson told his 13-year-old son, J.W., to take responsibility for the child pornography because he would only get a "slap on the wrist."  When the FBI

formally interviewed J.W., he told agents that, "it could have been me," regarding the child pornography on Wukoson's laptops.[1]

In a superseding indictment, a grand jury charged Wukoson with six counts of possession of child pornography involving a prepubescent minor, in violation of 18 U.S.C. § 2252(a)(4)(B), (b)(2) (Counts 1-6), and one count of witness tampering, in violation of 18 U.S.C. § 1512(c)(2) (Count 7). Wukoson executed a plea agreement with the government in which he committed to plead guilty to Counts 1-7 in return for the government's promise to recommend a sentence of no more than 4 years of imprisonment. The plea agreement provided that Wukoson's sentence would be imposed by the district court after it considered the Sentencing Guidelines, the district court could impose a sentence above or below the advisory guideline range, the district court was permitted to tailor the ultimate sentence in light of other statutory concerns, the district court possessed the authority to impose any sentence within and up to the statutory maximum, and Wukoson would not be able to withdraw his guilty plea as a result of the sentence that the district court imposed. Wukoson agreed to waive his appeal rights, with certain exceptions.

---

[1] In conjunction with his plea agreement, Wukoson executed a written factual proffer setting forth these undisputed facts.

The plea agreement reserved the government's right to inform the court of "all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning [Wukoson] and [Wukoson's] background." The agreement also reserved the government's right to make any recommendation as to the quality and quantity of punishment, subject only to the express terms contained in the agreement.

The district court conducted a plea colloquy. Wukoson stated that he read and discussed the plea agreement with his counsel before signing it, he understood that the district court was obligated to calculate a guideline range according to the Sentencing Guidelines and the court had some discretion to vary up or down from the guideline range, he understood that the district court could sentence him up to the maximum penalty authorized by law, and he could not withdraw his plea as a result of the sentence imposed. While reviewing the provisions of the plea agreement, the district court stated, "Paragraph five contains an unusual provision, particularly since I usually follow plea agreements. The Government has agreed to recommend that in terms of imprisonment, you be sentenced to no more than four years imprisonment." Wukoson stated that he talked to his lawyer and understood that, as part of the plea agreement, he was giving up his right to appeal the sentence unless it exceeded the maximum permitted by statute or the court declined to follow the joint sentencing recommendation of 4 years of

imprisonment.  Wukoson agreed with the facts contained in the plea agreement, confirmed that the child pornography was his and not J.W.'s, and pled guilty.

At the end of the plea hearing, the district court stated, "I'm not going to criticize the Government on the four-year -- you made your decision for the reasons.  I mean the guidelines were, in the PSI for one count, . . . 97 to something months, so it is going to be hard . . . to get below the four years."  The district court stated that it would follow the recommendation, although it was sure that "an unusual set of circumstances led to it."

A probation officer submitted a presentence investigation report ("PSI") and calculated a total offense level of 31 and a criminal category of I, with a resulting guideline imprisonment range of 108-135 months.[2]  The statutory maximum term of imprisonment was 20 years for each of the 7 counts.

Wukoson filed objections to the PSI and urged the district court to sentence him "at or below" 4 years of imprisonment pursuant to the parties' plea agreement. He also attached letters of support from family and friends that urged the court to show leniency in sentencing.  The government, in response, filed a series of letters

---

[2] The PSI applied a base offense level of 18, under U.S.S.G. § 2G2.2(a)(1); a 2-level increase for possessing material depicting a minor under the age of 12, under § 2G2.2(b)(2); a 4-level increase for possessing material that portrays sadistic or masochistic conduct or other depictions of violence, under § 2G2.2(b)(4)(A); a 2-level increase because the offense involved the use of a computer, under § 2G2.2(b)(6); a 5-level increase because the offense involved 600 or more images of child pornography, under § 2G2.2(b)(7)(D); a 2-level increase for obstructing justice, under § 3C1.1; and a 2-level decrease for acceptance of responsibility, under § 3E1.1(a).

from other relatives and acquaintances that highlighted the pain and anguish that Wukoson had caused.

At sentencing, Wukoson stated he had no objections to the PSI's computation of the guideline range but contested the inclusion of a criminal charge against him that was later dismissed by the state of Florida. The district court agreed to add a paragraph to the PSI that Wukoson denied the allegations. The court found that Wukoson's total offense level was 31, his criminal history category was I, and the advisory guideline range was 108-135 months of imprisonment.

The government stated that its recommendation was 4 years of imprisonment and detailed why it chose to agree to that recommendation. The government stated that when the parties negotiated a plea agreement right before trial, 4 years of imprisonment was what Wukoson requested as part of his agreement to plead guilty. The government began prepping Wukoson's son for trial in anticipation that Wukoson would argue that J.W. was the one responsible for the child pornography found on his computer. The government was worried that testifying in front of his father and other family might do irreparable harm to J.W.; for that reason, the government wanted to resolve the case without going to trial and agreed to recommend a term of 4 years of imprisonment. The government highlighted that child pornography was endemic in this country and that law

6

enforcement is doing what it can to combat the problem. The government additionally noted that the FBI, in investigating this case, connected to Wukoson's computer more than 23 times to download child pornography. The government stated that if this case went to trial, it would have presented evidence that Wukoson was at home when the child pornography was downloaded and that Wukoson's son was elsewhere. The government also stated that J.W. told his mother that he lied to the FBI because Wukoson told him to lie.

When the district court asked the government why it allowed Wukoson to withdraw an earlier plea, the government explained that it was because it had neglected to disclose a recorded interview with Wukoson's son and it felt the most ethical way to handle the situation was to allow Wukoson to withdraw his guilty plea. The government confirmed that a PSI was prepared after Wukoson pled guilty the first time and the resulting guideline range was 97-121 months of imprisonment. The district court then said, "Well, I'm not criticizing you for the position you took. I mean, I would not have allowed him to withdraw his plea, as I think I have said before." The court stated that when a defendant admits guilt under oath in a plea colloquy, it expects to be able to rely on that. The court then asked the government, "Isn't [Wukoson] benefiting by what he did? I mean, how do you escape the conclusion that by trying to withdraw his plea and then blaming his son that he has not -- if I follow your agreement, that he hadn't benefitted?"

The government stated that it could not argue against that and confirmed that its position was that it entered into the plea agreement because it wanted to spare J.W. the trauma of testifying.

The government stated that when it argues at a sentencing hearing for a child pornography crime, it considers the children in the videos and images who are being raped and sodomized and thinks about who is standing up for them. The government argued that it did not want the court to think that the government did not think that child pornography was a serious crime.

Karyn Wukoson, Wukoson's wife, addressed the court and stated that she was worried for J.W., because of Wukoson's betrayal, as well as for their five-year-old daughter because she was the same age as some of the girls in the child pornography on his computer; she asked the court to consider the maximum punishment with supervised release to hold Wukoson responsible for his actions.

David Crow, Karyn Wukoson's friend, addressed the court and stated that he did not believe that Wukoson was a good husband or father and he saw Wukoson physically and verbally assault Karyn. After the search warrant was executed, Wukoson told Crow that he hoped J.W. was not involved; Wukoson shortly thereafter told Crow that J.W. had confessed. When the FBI interviewed Crow, they told him that Wukoson said that Crow had slept at his house recently and could have been involved since he worked with computers. Crow denied

Wukoson's allegations and told the FBI agents that Wukoson told him that J.W. had confessed the night before. Crow asked the court to sentence Wukoson to a minimum of 13 years because that was how long it would take for his daughter to turn 18 years of age.

Leah Trietiak, J.W.'s mother, addressed the court and read a letter from J.W., which stated that Wukoson was in jail because of his own actions, Wukoson tried to blame him and others to protect himself, and he could not forgive Wukoson. Trietiak also read a letter from her 19-year-old daughter, who wrote that Wukoson was angry about the criminal allegations he faced when she was younger, Wukoson tried to turn J.W. against Trietiak and her parents by telling J.W. they were bad people, and in the last year J.W. became withdrawn and unhappy. Trietiak then stated that Wukoson blamed Karyn's father and brother and then told J.W. to take the blame for his actions. Wukoson was accused of abusing Trietiak's daughter 15 years ago; however, the charges were dropped because Trietiak defended him.

Wukoson then stated that he was not going to get into Trietiak's statements about the 15-year-old allegations, but he disputed her assertions. Wukoson argued that the video of J.W.'s interview and J.W.'s change in position would have created reasonable doubt if this case had gone to trial. Wukoson argued that Crow repaired Wukoson's computers in the past, which also could have raised

9

reasonable doubt in a trial.  Wukoson asked the court to accept the recommendation in the plea agreement, because no one, especially Wukoson, wanted J.W. to go through a trial.  Wukoson argued that the recommended sentence was reasonable in light of the circumstances in this case.  The district court stated that it understood Wukoson's argument but asked whether Wukoson created the reasonable doubt by blaming J.W. and Crow.  Wukoson responded that he had accepted responsibility.  The court pointed out that Wukoson had accepted responsibility in his first plea agreement and colloquy and that the court was still getting letters from Wukoson's family saying Wukoson did not commit the crime.  Wukoson stated that it was not him saying that and those people just could not believe he had committed the crime.

Wukoson's mother, sister, and close friend also addressed the district court on behalf of Wukoson, urging the court to show leniency.  Wukoson then addressed the court for allocution, stating that he took responsibility for his actions and that he had made mistakes and was owning up to them.  The district court asked Wukoson what he meant by that because so far Wukoson had only said he was sorry about what had happened to other people and had not said anything showing the court that he understood what he had done.  The court stated, "That's the problem I have with this.  You seem like you are still persisting in this, you know, it is everybody else's fault and I didn't do anything wrong."  Wukoson stated

10

that he did not blame anyone else and he was sorry about what he had done and how it had affected his friends and family.

The district court then stated it had considered all the statements from the parties, the PSI, the advisory guideline range, the 18 U.S.C. § 3553 factors, and the plea agreement. The court noted that Wukoson had pled guilty twice, and the first time Wukoson pled guilty the guideline range was 97-121 months of imprisonment. The court stated that now, on the eve of trial, Wukoson pled guilty again, saying that he takes responsibility for these actions. The court stated that, in considering the § 3553 factors, child pornography has a tremendous impact on the victims and that the reason sentences are strict is to try to remove the demand for child pornography. The court said that when considering Wukoson's personal characteristics, the court believed that Wukoson refused to acknowledge what he had done and, even though he said he was sorry, still appeared to blame other people. The court noted that it had never seen a father try to blame his son for his crime and it had a difficult time with that aspect of this case because family members were usually trying to take the blame for another family member.

The district court stated that it was troubled because Wukoson's witness tampering, in part, forced the government to agree to this plea deal. The court noted that while it usually followed plea agreements, it was not bound to do so. The court recognized that Wukoson's appellate waiver applied only if the court

followed the sentencing recommendation, but the court did not believe 4 years of imprisonment was a just sentence under the circumstances of this case and it would not follow the plea agreement for those reasons.

The district court stated it would go below the guideline range because of the parties' efforts to resolve the case and sentenced Wukoson to 96 months of imprisonment, consisting of concurrent terms of 96 months as to all 7 counts, and 15 years of supervised release.  Wukoson objected, stating that he "reserv[ed] all written and oral objections that the Court has mentioned and that [he] raised with regard to the recommended sentence not being accepted by the Court."

On appeal, Wukoson argues that the government breached its plea agreement, which required the government to recommend a 4-year sentence, by presenting extensive argument and testimony that sabotaged the recommendation.

## II. DISCUSSION

Generally, we review *de novo* whether the government has breached a plea agreement.  *United States v. Hunter*, 835 F.3d 1320, 1324 (11th Cir. 2016). However, if a defendant failed to raise the issue before the district court, then the issue is reviewed only for plain error.  *United States v. De La Garza*, 516 F.3d 1266, 1269 (11th Cir. 2008).  Under plain error review, the defendant must show that an error occurred, the error was plain, the error affected substantial rights, and the failure to correct the error would seriously affect the fairness of the judicial

12

proceeding. *Id.* For an error to affect substantial rights, the defendant generally must show that it affected the outcome of the district court proceedings. *Id.*; s*ee also Puckett v. United States*, 556 U.S. 129, 142 n.4, 129 S. Ct. 1423, 1433 n.4 (2009). If it is unclear whether the government's breach affected the defendant's sentence, then the defendant has not shown plain error. *De La Garza*, 516 F.3d at 1270-71. Automatic reversal is appropriate only when a breach of the plea agreement was established and an objection to the government's breach of a plea agreement was preserved at the district court. *Hunter*, 835 F.3d at 1329.

A plea agreement is analyzed according to the defendant's reasonable understanding in executing the plea agreement. *United States v. Rewis*, 969 F.2d 985, 988 (11th Cir. 1992). To determine whether the government breached a plea agreement, the court must determine the scope of the government's promises. *United States v. Copeland*, 381 F.3d 1101, 1105 (11th Cir. 2004). Implied obligations not agreed to by the parties will not be inferred. *See United States v. Benchimol*, 471 U.S. 453, 455, 105 S. Ct. 2103, 2105 (1985) ("[O]ur view of Rule 11(e) is that it speaks in terms of what the parties in fact agree to, and does not suggest that . . . implied-in-law terms [be] read into [a plea] agreement.").

There is no limitation placed upon the information that a district court may receive for sentencing purposes concerning the background, character, and conduct of a person convicted of a federal offense. 18 U.S.C. § 3661. The Supreme Court

has noted that, at sentencing, a district court has broad discretion to consider "the fullest information possible concerning the defendant's life and characteristics." *Pepper v. United States*, 562 U.S. 476, 480, 131 S. Ct. 1229, 1235 (2011) (quoting *Williams v. New York*, 337 U.S. 241, 247, 69 S. Ct. 1079, 1083 (1949)). When imposing a sentence, the district court must consider the factors set out in 18 U.S.C. § 3553(a).

Wukoson's argument that he is entitled to automatic reversal is based on cases where defendants preserved their objections in the district court and their claims were therefore subject to *de novo* review on appeal. *See Hunter*, 835 F.3d at 1329 ("Since we conclude that the government breached the plea agreement and Hunter preserved his objection to that breach, reversal is required."); *see also United States v. Taylor*, 77 F.3d 368, 370-71 (11th Cir. 1996) (applying the standard in *Santobello v. New York*, 404 U.S. 257, 262-63, 92 S. Ct. 495, 499 (1971), where the defendant objected in the district court to the government's breach of the plea agreement and was therefore entitled to *de novo* review); *United States v. Grandinetti*, 564 F.2d 723, 727 (5th Cir. 1977) (also applying the standard set in *Santobello*, 404 U.S. at 262-63, 92 S. Ct. at 499). However, Wukoson did not preserve his claim because he never objected that the government violated its obligations and never argued, nor asked the district court to rule on whether, the government had breached the plea agreement. *See De La Garza*, 516 F.3d at 1269.

14

Wukoson objected below to the district court not following the sentence recommendation but argues on appeal only that the government erred in breaching the plea agreement.  While he preserved any previous objections at the conclusion of the sentencing hearing, the only objection Wukoson made at sentencing was to the inclusion of a previous offense in the PSI.  Accordingly, Wukoson's claim is subject to plain error review.  *See id.*

Wukoson fails to show there was plain error.  The government was not required to enthusiastically recommend a 4-year sentence.  *See Benchimol*, 471 U.S. at 455-57, 105 S. Ct. at 2105.  The plea agreement required that the government recommend a sentence of no more than 4 years of imprisonment; it did not expressly require the government to "advocate" for a 4-year sentence on Wukoson's behalf.  *See id.*, 105 S. Ct. at 2105.  The government met this promise by stating its recommendation for a 4-year sentence at sentencing.  Unlike in *Rewis*, where the government was permitted to comment only on facts relevant to the current offense, the government in Wukoson's plea agreement expressly reserved the right to inform the court of "all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning [Wukoson] and [Wukoson's] background."  *See Rewis*, 969 F.2d 985.  Further, the plea agreement alerted Wukoson, and Wukoson testified at his plea colloquy that he understood, that the

15

district court was required to calculate and consider his guideline range and could impose a sentence of up to 20 years of imprisonment.

Furthermore, the government's conduct at the sentencing hearing was not a plain breach of the plea agreement. First, the government's presentation of witnesses at the sentencing hearing was a proper exercise of the rights reserved to it in the plea agreement. *See United States v. Horsfall*, 552 F.3d 1275, 1283 (11th Cir. 2008) (holding that the government's presentation of victim impact evidence did not breach the government's agreement not to recommend an upward departure from the Guidelines because the government had reserved the right to present such evidence and did not recommend an upward departure). Nothing in the plea agreement prohibited the government from presenting information that was relevant to the § 3553 factors, including the history and characteristics of the defendant as described by others. *See* 18 U.S.C. § 3553. The government in Wukoson's case, like the prosecutor in *Levy*, expressly recommended the agreed-upon sentence, and while it presented witnesses, it did not elicit or endorse their statements or their recommendations for a higher sentence. *See United States v. Levy*, 374 F.3d 1023, 1032 (11th Cir. 2004), *vacated and remanded on other grounds*, 545 U.S. 1101, 125 S. Ct. 2542 (2005). The witnesses were not parties to the plea agreement and, therefore, were not bound by the agreement to recommend a sentence of 4 years. The witnesses' statements at the hearing were consistent

16

with their letters, which were already part of the record, and addressed the characteristics of Wukoson and the nature of the offense.

Second, it is not plain that the government's explanation of why it agreed to recommend a 4-year sentence breached the plea agreement. While Wukoson asserts that the government undermined its sentencing recommendation by claiming that it was forced to enter the plea agreement because of Wukoson's witness tampering, this argument fails under our precedent. *See id.* (concluding that the government did not breach the plea agreement when the prosecutor was apologetic and implied it was forced to recommend the sentence by "grudgingly" making the recommendation). Additionally, the government's emphasis of the circumstances behind the plea in response to the district court's question of why the government executed the plea agreement was not plain error because a district court may inquire into the circumstances behind a recommended sentence to aid it in exercising its sentencing discretion. *See Grandinetti*, 564 F.2d at 726.

Third, it is not plain that the government's arguments at sentencing breached the plea agreement because those arguments did not expressly conflict with the government's promises. Wukoson's reliance on other cases is again misplaced. While the prosecutor in *Grandinetti* made a "grudging" statement that the government was required to adhere to the plea agreement, the prosecutor effectively argued against the agreement when he stated it was illegal and therefore

17

breached the defendant's reasonable understanding that the government had agreed to make a "forceful and intelligent" sentencing recommendation. *See id.* at 725, 726-27. In contrast, Wukoson's plea agreement required the government only to recommend a sentence of 4 years of imprisonment. While the government's explanation of why it executed the plea agreement, its discussion about the seriousness of child pornography, and its presentation of witnesses may have implicitly undermined its sentencing recommendation, the government never made an express statement that the sentence was improper.

The government's conduct was also distinguishable from *Taylor*, where the government argued in support of the PSI's higher recommended guideline range in response to the defendant's objection, which expressly conflicted with the government's promise to recommend a 10-year sentence. *See Taylor*, 77 F.3d at 369. Here, the government and Wukoson agreed with the guideline range presented in the PSI, and while Wukoson objected to the inclusion of an alleged offense in the PSI, the objection did not affect the guideline range. Even though Trietiak made statements regarding the alleged offense, the allegations were already in the PSI, and as discussed above, the government did not elicit or endorse her statement. The government's argument regarding the seriousness of child pornography is also distinguishable from the government's conduct in *Taylor*. The government here was arguably contrasting its general position on child

pornography with this specific case, stating that its recommendation was "limited to this case on these facts and to no other," and its express sentencing recommendation was not simply paying "lip service" to the terms of the plea agreement. *See id.* at 370-71.

In any event, even if the government plainly breached the plea agreement, he must show that the breach affected his substantial rights. *De La Garza*, 516 F.3d at 1269. Wukoson cannot show that any breach of the plea agreement affected his substantial rights because the record suggests that the district court would not have imposed the recommended sentence absent the breach. *See Puckett*, 556 U.S. at 142 n.4, 129 S. Ct. at 1433 n.4 ("When the rights acquired by the defendant relate to sentencing, the '"outcome"' he must show to have been affected is his sentence."). The record does not support Wukoson's argument that the district court changed its mind about following the sentence recommendation only after hearing the government's argument and witnesses at sentencing. At the plea hearing, the district court expressed several reservations with the sentencing recommendation. While the district court indicated that it would follow the recommendation, it also stated at the end of the plea hearing that it was "pretty offensive" for Wukoson to plead guilty and then blame his son, it did not see that there had been much acceptance by Wukoson, and Wukoson's actions "were really offensive from start to finish."

The district court's statements at sentencing focused on conduct by Wukoson that would have been in the record through the presentence investigation report and factual proffer even if the government had not said a word. Moreover, after explaining its reasoning for not following the recommended sentence, the district court still sentenced Wukoson below the guideline range because of the parties' efforts to resolve the case. Accordingly, Wukoson failed to show that the government's breach of the plea agreement, if any, affected his substantial rights.

**AFFIRMED.**